X FILED ___ LODGED
___ RECEIVED ___ COPY
JAN 20 2009
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY Z DEPUTY

Scott Malcomson
450 N. Hall
Mesa, Arizona 85203
(602) 323-7458

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Scott Malcomson

vs.

Topps, Inc

CV '08 2306 PHX -GMS

# REPLY TO ANSWER

Plaintiff, Scott Malcomson, Replies to Defendant's Answer to Complaint, as follows:

**<u>On Defendant's First Defense:</u>**

1. *Defendant denies that it is organized and existing pursuant to the laws of the State of New York.*

Plaintiff bases his allegation on the fact that the Defendant's corporate head-quarters are based in New York. Defendant also claims jurisdiction for judicial protections in that State, as per www.topps.com/ aspx: "These Terms and Conditions are governed by laws of the State of New York, without regard to its conflict of laws principles."

2. *Defendant denies validity of all allegations listed in Paragraph 5 of Complaint.*

Paragraph 5 is a summary of Paragraphs 3 and 4, concerning which Defendant states it "lacks knowledge or information sufficient to form a belief". Denial of the allegations requires the formation of a belief that they are false.

3. *Defendant denies that any alleged use of Plaintiff's work was illegal.*
Refers to Paragraph 6 of Complaint. Defendant states that it "lacks knowledge or information sufficient to form a belief" about the allegations themselves. To deny the allegations is to form a belief that they are false.

4. *Defendant denies that it either took over WizKids' legal representation, or ignored Plaintiff's communications of intent to pursue legal action in absence of settlement.*
Sarah Pharris, while employed by WizKids in July 2008, stated to Plaintiff that Topps controlled WizKids' legal representation. Pharris also signed off on the certified letters of October 2007 and July 2008 which Plaintiff had sent to "Legal Department" via the WizKids address. After being so informed, Plaintiff attempted to contact Defendant directly, in the persons of Topps Assistant Counsel Heather Greenberg and Topps General Counsel Andrew Gasper, via telephone and electronic mail, through November 2008. None of Plaintiff's calls, voicemails or electronic mails were responded to. In an electronic mail dated 12 January 2009, the same date Defendant filed its Answer to Complaint, Gasper acknowledged Plaintiff had "contacted Topps and WizKids numerous times in the past" and provided proper contact information. Gasper also complained in a telephone conversation the same day of monetary demands Plaintiff had made in his certified letters to WizKids, confirming Topps' receipt.

Plaintiff also maintains electronic mails showing settlement offers exchanged between Plaintiff and WizKids in May 2008. These took place through the direct intervention of Loren Coleman, owner of Catalyst Game Labs, the licensee of the "Classic Battletech" property since June 2007, who acted without solicitation as informal "go-between" for the two parties. Save strictly for Mr. Coleman's specific intervention, Defendant entirely ignored Plaintiff's communications.

5. *Defendant alleges that no claim has been made against it upon which relief can be granted.*

Plaintiff asserts the doctrine of *respondeat superior* ("let the master answer"). Topps, as owner of WizKids, having entered into joint operations with same, having stripped away the ability of same to manage its own legal affairs, and having ignored Plaintiff's pre-filing attempts to begin a dialogue concerning this matter, is specifically responsible for the illegal actions committed by its subordinate company in August 2007. These actions on the part of persons in the employ of, or entrusted with authority by, WizKids, caused two counts of copyright infringement (one exacerbated by fraud) to come into being.

Having been advised of these matters, as well as of Plaintiff's intent to pursue civil and criminal action should no settlement be achieved, Defendant chose to close WizKids, preventing Plaintiff from seeking relief from that company. Under the doctrine of *qui facit per alium facti per se* ("to act in one's own interest by acting through another"), Defendant's action in closing its subordinate company while ignoring Plaintiff's communications serves liability upon the Defendant. Plaintiff further asserts the doctrine of "unclean hands" applies due to Topps' decision to ignore WizKids' liability prior to its closure, thus preventing remedy. Plaintiff also asserts that the doctrine of "frolic and detour" does not apply, as WizKids acted in furtherance of the business of its parent company.

Therefore, Defendant must assume liability for the acts of its subordinates.

**On Defendant's Third Affirmative Defense:**

6. *Defendant alleges the Court has no personal jurisdiction over it.* Article III, Sec. 2, U.S. Constitution, makes clear the Court retains personal jurisdiction in all cases relating to infringement of U.S. federal law, including between citizens of different states. As this issue arises out of violations of Title 17 U.S.C., the personal jurisdiction of the Court is affirmed. The U.S. Supreme Court also affirmed, in *International Shoe v. Washington*, 326 U.S. 310 (1945), that personal jurisdiction obtains when a company enjoys the benefits and protections of the forum State. These criteria were met via the right of the company to do business in, and seek redress of greivances in the courts of, the forum State. Topps certainly meets these criteria as pertains to the State of Arizona.

**On Defendant's Fourth Affirmative Defense:**

7. *Defendant alleges the Court does not retain subject matter jurisdiction over it.* As per 28 U.S.C., Sec. 1331, district courts retain jurisdiction in all civil actions arising under the laws of the United States. This perforce includes 17 U.S.C.'s statutes concerning copyright infringement. Defendant's action, in knowingly preventing Plaintiff from pursuing action against a subordinate company under 17 U.S.C., causes subject matter jurisdiction to fall upon Defendant.

**On Defendant's Fifth Affirmative Defense:**

8. *Defendant alleges that Plaintiff's claims are barred by doctrine of waiver.* Plaintiff denies the existence of any waiver which would properly bar his claims.

**On Defendant's Sixth Affirmative Defense:**

9. *Defendant alleges that Plaintiff's claims are barred by doctrine of estoppel.* Plaintiff denies Defendant meets criteria needed to claim protection of estoppel.

**On Plaintiff's Seventh Affirmative Defense:**

10. *Defendant alleges Plaintiff's claims are barred by doctrine of laches.* Plaintiff's rights were revealed by WizKids personnel, in August 2007, to have been violated. Plaintiff began seeking relief via settlement in October 2007. As a record of filing of copyright is necessary to pursuit of criminal charges, Plaintiff filed with the U.S. Copyright Office in November 2007. Plaintiff asserts that a civil case was intended to follow the criminal trial. However, this was delayed by backlog at the Copyright Office, initially cited at four months. Due to an accounting error, Plaintiff had to reissue payment for the filing in March 2008. A July inquiry revealed the delay had been increased to eight months. Another inquiry in November increased the delay to twelve months, placing the current expected completion of the filing process at some point in March 2009.

Plaintiff communicated to Defendant via its subordinate company that charges would be pressed immediately upon receipt of this necessary notice of filing. During this period of enforced delay, Plaintiff sought to obtain settlement from WizKids (October 2007 - July 2008) and, later, Defendant (September 2008 - November 2008). Both Defendant and its subordinate company, with the sole exception of the May 2008 intercession of Loren Coleman, ignored all attempts at communication. By closing WizKids, Defendant pre-empted Plaintiff's pursuit of a criminal case. Plaintiff's decision to attempt the sale of WizKids' intellectual properties after its closure also endangered the pursuit of settlement, as Plaintiff had advised Defendant as early as October 2007 certain elements of those properties were being sought. Plaintiff therefore filed this action.

As Plaintiff has from the start sought appropriate legal remedy according to law, prevented only by delays incurred from federal authorities combined with specific actions by Defendant, the doctrine of laches does not apply.

**<u>On Defendant's Eight Affirmative Defense:</u>**

11. *Defendant alleges Plaintiff's claims are barred by statute of limitations.*

Plaintiff's action stems from public and private statements, made in and prior to August 2007, by persons employed or otherwise entrusted with authority by WizKids. These statements alleged, in part and whole, that WizKids had not entered into an agreement with Plaintiff for use of his work in 2002. Plaintiff's discovery of infringement therefore dates to August 2007. Moreover, a court may elect to hear a case of copyright infringement, according to 17 U.S.C., regardless of the passage of time.

**<u>On Defendant's Ninth Affirmative Defense:</u>**

12. *Defendant alleges Plaintiff's claims are barred by doctrine of acquiescence.*

Upon discovery of infringement in 2002 and 2007, Plaintiff advised WizKids of their copyright infringement and his intent to pursue legal action. In the first incident settlement was reached in the form of a limited agreement for use of Plaintiff's work. In the second incident, Plaintiff maintained attempts at opening a settlement dialogue during delays imposed by the U.S. Copyright Office. At no time did Plaintiff acquiesce to the illegal commercial use of his work by WizKids.

**<u>On Defendant's Tenth Affirmative Defense:</u>**

13. *Defendant alleges Plaintiff's claims are barred for lack of naming necessary parties.*

Topps Incorporated, having prohibited pursuit of its subordinate company WizKids via its closure, and being the current owner of the "Classic Battletech" property sought by Plaintiff as damages for the acts of its subordinate company, has been named as the responsible party.

**On Defendant's Eleventh Affirmative Defense:**

14. *Defendant alleges Plaintiff does not have a copyright in the claimed work.* WizKids accredited Plaintiff as the author of both works in question (2001 and 2002 versions) beginning in August 2002. Recognition of Plaintiff as the author has never been challenged. As no owner of the "Battletech" property has at any time, via any means, obtained Plaintiff's copyrights in any of his original works, he continues to retain those rights in accordance with 17 U.S.C., Sec. 201(c), regarding "collective work". Both works also qualify under the definition of "contributions to a collective work", that being "Classic Battletech" as a whole. Plaintiff is the sole remaining author holding original copyright to any portion of "Classic Battletech".

**On Defendant's Twelfth Affirmative Defense:**

15. *Defendant asserts Plaintiff's claims are barred by doctrine of fair use.* Defendant's subordinate company did not use Plaintiff's work for activities protected under 17 U.S.C., Sec. 107. Instead, WizKids used Plaintiff's work to promote readership of, and visitation to, a commercial website, with intent to sell commercial products via that site. Fair use doctrine does not apply.

**On Defendant's Thirteenth Affirmative Defense:**

16. *Defendant alleges Plaintiff's claims are barred by doctrine of incidental use.* The doctrine of incidental use is intended to foment freedom of speech by forgiving intrusions of privacy which are essentially insignificant in nature. Deliberate theft of intellectual property is neither insignificant, nor classifiable as mere "intrusion of privacy". Incidental use doctrine does not therefore apply.

**On Defendant's Fourteenth Affirmative Defense:**

17. *Defendant alleges Plaintiff's claims are barred by the First Amendment.* Without further explanation from Defendant as to why such a bar would exist, it cannot be assumed to apply, save under such a broad definition as would effectively eliminate copyrights altogether.

**On Defendant's Fifteenth Affirmative Defense:**

18. *Defendant alleges Plaintiff's claims are barred by doctrine of abandonment.* Plaintiff has never enunciated or otherwise suggested any abandonment of his copyrights. He has asserted his copyrights on various occasions, particularly in WizKids' own public forums. The doctrine of abandonment does not apply.

**On Defendant's Sixteenth Affirmative Defense:**

19. *Defendant alleges Plaintiff's claims are barred by doctrine of unclean hands.* Defendant is required to show proof of "unclean hands" in order to invoke such doctrine, and has not done so.

**On Defendant's Seventeenth Affirmative Defense:**

20. *Defendant alleges that any damages suffered by Plaintiff are the result of acts or omissions of third persons over whom Defendant had neither control nor responsibility.*

Defendant knowingly made pursuit of the alleged "third persons" impossible by closing WizKids, a company which it owned and which it knew at the time was alleged to have infringed Plaintiff's copyrights. This Defense is not permissible under the doctrine of *respondeat superior.*

**<u>On Defendant's Eighteenth Affirmative Defense:</u>**

21. *Defendant alleges Plaintiff failed to mitigate his damages.*

Plaintiff did in fact mitigate his damages by entering into an *ex post facto* agreement for use of his work with WizKids in 2002, choosing to forgo legal action at that time in return for accreditation, canonization, and retention of all rights. On this basis, Plaintiff also furnished a second version of the original work, approximately twice the length of the first. Persons employed or otherwise entrusted with authority by WizKids declared this agreement null and void in August 2007. Plaintiff then attempted to assert his rights under the 2002 agreement, only to be publically derided and privately threatened with forum banishment.

The matter was noted by David Stansel-Garner, Operations Manager of WizKids' licensee Catalyst Game Labs, who declared a retroactive policy which stripped Plaintiff's work of canonicity. WizKids ignored Plaintiff's requests for confirmation of the 2002 agreement. Despite having used Plaintiff's work for four years, WizKids' public position at the time of its closure was that it had never entered into an agreement with Plaintiff for use of that work. This suit has been filed in part because Defendant, its subordinate company, and its licensees, have repeatedly rebuffed Plaintiff's attempts at mitigation.

**<u>On Defendant's Nineteenth Affirmative Defense:</u>**

22. *Defendant alleges that it acted with innocent intent.*

Having chosen to ignore communications by Plaintiff notifying Defendant of criminal acts committed by its subordinate company, as well as offers for settlement from Plaintiff that would not have imposed significant hardship, Defendant cannot be said to have acted innocently.

**SUMMARY:**

Plaintiff retains all rights to all works authored by him which have been published by the owners of the collective work known as "Classic Battletech". These works, having been publically displayed by WizKids as an integral part of that work for four years without any caveats of any kind to the contrary, were used to advance commercial interests which served WizKids both as an independent company and as a subsidiary doing business on behalf of Topps. When WizKids violated the 2002 agreement in August of 2007, it did so as a wholly-owned subsidiary of Topps, Incorporated.

Plaintiff attempted on numerous occasions to contact Defendant and its subordinate company in order to obtain a non-judicial settlement, advising them of their liability. Defendant chose to ignore the communications, and then acted in such a way as to prevent Plaintiff seeking relief from its subordinate company.

Defendant's Answer to Complaint is demonstrably composed of improper and unsupported assertions, combined with "lack of knowledge...sufficient to form a belief" about most details pertinent to the case.

THEREFORE, Plaintiff requests the Court dismiss Defendant's First through Nineteenth Defenses for lack of substance, and that it find in favor of Plaintiff's original Complaint.

Dated 20 January 2009

Scott Malcomson
Plaintiff, filed as *pro se* litigant

Certificate of Service

I certify a copy of the foregoing Reply was served on Defendant, Topps Inc., 1 Whitehall St., New York, N.Y. 10004 via U.S. Mail this 20 January 2009.