**ALTFELD BATTAILE & GOLDMAN, P.C.**
250 North Meyer Avenue
Tucson, Arizona 85701
Tel:(520) 622-7733
Fax:(520) 622-7967
JFBattaile@abgattorneys.com
John F. Battaile, ASB No. 4103

**Ingram Yuzek Gainen Carroll & Bertolotti, LLP**
250 Park Avenue
New York, New York 10177
Tel: (212) 907-9600
Fax: (212) 907-9681
DEbert@ingramllp.com
MTajika@ingramllp.com
David G. Ebert
Mioko C. Tajika
*Admitted Pro Hac Vice*

*Attorneys for Defendant, The Topps Company, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Scott Malcomson, <br><br> Plaintiff, <br><br> v. <br><br> The Topps Company, Inc., <br><br> Defendant. | NO. CV08-2306-PHX-GMS |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, The Topps Company, Inc., submits this memorandum of law in opposition to *pro se* plaintiff Scott Malcomson's motion for summary judgment, and in support of its cross-motion for summary judgment.

**Summary of Argument**

Classic BattleTech is a war-gaming and science fiction franchise (the "BattleTech Property"), which is owned by WizKids, Inc., n/k/a Former Games, Inc., a wholly-owned

Topps subsidiary. Malcomson is an avid fan of the BattleTech Property. Malcomson seeks a declaration that he co-owns with Topps the entire BattleTech Property based on two submissions that he made to, and that were posted on, a BattleTech web site. Malcomson's submissions were comprised of verbatim copying of a pre-existing work—in which Malcomson claims no rights—to which he added his limited original material.

As explained in Point I, however, WizKids, not Topps, owns the BattleTech Property. There is no basis for Malcomson to assert a claim against Topps for joint ownership, or anything else.

In Point II we show that Malcomson's claim is also barred by the statute of limitations. Malcomson filed his action in December 2008. A claim for co-ownership must be asserted within three years of express repudiation by the co-owner, which, for his first submission ("Submission"), occurred in 1996. His claim on the revised version of the same submission ("Revised Submission") accrued in 2002, when WizKids distributed BattleTech works bearing copyright notices in its name only; continued to file copyright registrations in its name only; and exploited the works without paying any royalties to Malcomson.

And as explained in Point III, even if his claim were not barred by the statute of limitations, Malcomson cannot be deemed a co-owner of the entire BattleTech Property because his contributions are *de minimis*. Malcomson has not adduced any objective evidence that the parties regarded themselves as co-owners. In fact, Malcomson himself admits that he did not view himself as a co-owner at the time of creation, as shown by, among other acts, *his disclaimer of "BattleTech" from his copyright registration*.

Finally, Malcomson's works are unauthorized derivative works. As an infringer, he cannot complain that the owner of the original work improperly used his works.

**Argument**

Under Fed. R. Civ. P. 56(c), summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue will be absent if, viewing the evidence in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 980 (D. Ariz. 2008).

The movant bears the burden of informing the Court of the basis for its motion, and demonstrating the absence of any genuine issue of material fact. *Id.* If the movant discharges this burden, the opposing party must set forth specific facts showing a genuine issue for trial. *Id.* Summary judgment is proper against a party who "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (citation omitted).

Malcomson failed to submit a statement setting forth each material fact on which he relies, as required by LR Civ. 56.1(a). This alone is grounds for denial of his motion. LR Civ. 56.1(a). Though he is appearing *pro se,* this Court advised Malcomson in a February 20, 2009 conference to read the civil judicial rules and the local rules for the District of Arizona. (Transcript of Rule 16 Scheduling Conference, Docket Index ("D.I.") #23 at 5:23–6:9; 7:2–24.) A *pro se* movant's failure to comply with local rules, or to set forth material facts or legal bases in support, is cause to deny the motion. *Madison v. First Magnus Fin. Corp.,* No. CV-08-1562-PHX-GMS, 2009 WL 2382412, at *2 (D. Ariz. Aug. 3, 2009) (J. Snow); *Rivera v. Transnation Title Co.*, No. CV 07-815-PCT-MHM, 2008 WL 650569, at *3 (D. Ariz. March 7, 2008).

**Point I**

**Topps Does Not Own The BattleTech Property At Issue**

Malcomson's sole claim is for a declaration that he is a "joint owner" of the BattleTech Property with Topps. (Plaintiff's Motion for Summary Judgment ("Pl. Motion") at 7; First Amended Complaint ("Am. Compl."), D.I. #30 at 5; Ebert Aff. Ex. H 97:16–98:1.) But the BattleTech Property is owned by WizKids. (Topps's Local Rule 56.1(a) Statement of Facts ("SOF") ¶¶ 3–5.) Topps owns 100% of WizKids but does not own the BattleTech Property. (SOF ¶ 6.)

Topps disclosed its relationship to WizKids, and WizKids's ownership of the Battletech Property, before fact discovery closed on July 31, 2009. (SOF ¶ 7.) Malcomson knew this as he demonstrated his awareness of FASA's sale of the BattleTech Property to WizKids at his July 2, 2009 deposition. (SOF ¶ 7.)

Malcomson's election to proceed against the wrong party is fatal to his claim. *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 858–859 (9th Cir. 1986) (affirming the grant of summary judgment to defendant parent corporation when plaintiff failed to prove that the vessel causing plaintiff's death was owned by the parent, failed to show that the parent controlled the vessel, and failed to show that the parent was the alter ego of its subsidiary corporations that owned and operated the vessel); *Neff v. Am. Dairy Queen, Inc.*, 58 F.3d 1063, 1064, 1068–1069 (5th Cir. 1995) (affirming grant of summary judgment to defendant on the basis that plaintiff sued the wrong party when plaintiff failed to show that defendant owned or controlled the store); *Sanders v. Consol. Tribal Health Project, Inc.*, No. C-95-4655 FMS, 1996 WL 79731, at *1 (N.D. Cal. Feb. 8, 1996) (dismissing *pro se* action when plaintiff sued the wrong party).

## Point II

## **Malcomson's Co-Ownership Claim is Barred by the Statute of Limitations**

The statute of limitations for a copyright co-ownership claim is, as with an infringement action, three years. 17 U.S.C. § 507(b). In the Ninth Circuit, "claims of co-ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996).

Express repudiation has been found where the defendant registered the copyright in his name only; publicly distributed the work with a copyright notice identifying only himself as the owner; and exploited the work for years without paying royalties to plaintiff. *Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ. 3897 (RWS), 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008).

Malcomson holds a copyright registration on the Revised Submission only. (SOF ¶ 30.) Thus, he does not even discharge his burden of showing that he owns the initial Submission. And as for the Revised Submission, because he did not obtain the registration within five years of publication, Malcomson's registration is not entitled to a prima facie presumption of validity of ownership. 17 U.S.C. § 411(c). And in any event, the presumption "may be rebutted and defeated on summary judgment." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1236 (9th Cir. 2000).

Malcomson contends that his claim did not accrue until January or February 2009, when he allegedly first discovered that his copyright was being challenged. (Ebert Aff. Ex. H at 102:4–21.) But with respect to his first Submission, FASA, the original owner of the BattleTech Property, repudiated co-ownership much earlier. The September 18, 1996 letter that FASA sent to Malcomson stated "[w]e regret to inform you that we have chosen not to develop your project." (SOF ¶ 18.) The amended complaint also alleges

-5-

that "[i]n September of 1996, FASA formally notified Plaintiff of their decision not to contract for the use of Plaintiff's work . . . ."  (Am. Compl. D.I. #30 ¶ 2.)  Because Malcomson did not file his lawsuit until December 2008 (Complaint, D.I. #1), his co-ownership claim on his first Submission is time-barred.[1]

Nor can there be any claim that WizKids expressed its intent to become co-owners when it posted his Submission on the BattleTech site.[2]  Unlike infringement actions, for which a new claim accrues with each separate infringing act, the statute accrues only once on a co-ownership claim.  *Zuill*, 80 F.3d at 1371.  Malcomson's failure to start a lawsuit within three years of 1996 is fatal to his claim on his first Submission.

Malcomson's claim on the Revised Submission is also time-barred.  At all times, including after his Revised Submission appeared on the BattleTech site in 2002, BattleTech publications have been registered in the name of FASA or WizKids only.  (SOF ¶ 29.)  In addition, WizKids has been exploiting the BattleTech Property for years without payment to Malcomson, which constitutes express repudiation.  *Silva v. Sunich*, No. CV 03-9327 GPS (CMW), 2006 WL 6116645, at *6 (C.D. Cal. Sept. 6, 2006) (plaintiff's 2003 co-ownership claim expired because he knew in 1997 that defendant was publicly selling the goods at issue without paying royalties).

Malcomson may claim that the "writing credit" given to him is inconsistent with

---

[1] Express repudiation was also made when FASA obtained a default judgment against Malcomson in 2000.  (SOF ¶ 19.)  FASA sued Malcomson seeking a declaration that it did not owe any contractual obligations to publish Malcomson's Submission.  (SOF ¶ 19.)  FASA's express repudiation cannot be any clearer, and Malcomson's action is still time-barred because he did not sue within three years of 2000.

[2] It is unclear which entity was responsible for posting the Submission and Revised Submission on the BattleTech site.  The BattleTech site was created in 2001 or so, and was operated entirely by loyal BattleTech fans, who volunteered their time.  (SOF ¶ 20.)  Topps assumes, for purposes of this motion only, that WizKids posted the submissions on the BattleTech site.

-6-

an express repudiation of co-ownership. When the Revised Submission appeared on the site in 2002, Malcomson was credited only on two pages of the site: (1) he was given a "Writing Credit" where his Revised Submission appeared; and (2) on a general credits page, "for the ELH write-up." (Pl. Motion Exs. B-1, B-2.) The credit was explicitly limited to Malcomson's writing on the ELH; it was not applicable to the entire BattleTech Property. But on both of these pages, a copyright notice appeared directly underneath Malcomson's writing credit as follows:

> © 2001 WizKids, LLC. BattleTech is a registered trademark of WizKids, LLC. All Rights Reserved. Original contents of ClassicBattleTech.com copyright © 2001 Fantasy Productions LLC. Maintained by Warner Doles.

(Pl. Motion Exs. B-1, B-2 (last page).)

Malcomson's name does not appear anywhere in this copyright notice, which appeared on every single page on the site. The absence of credit in the copyright notice is an express assertion of adverse ownership; i.e., an express repudiation of co-ownership. *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315–1316 (S.D.N.Y. 1997) (plaintiff's 1993 co-authorship action was time-barred because his claim accrued in 1984 when he received a copy of the comic book bearing a copyright notice indicating defendant as the sole owner).

Furthermore, the June 10, 2002 legal notices on the BattleTech site provided:

> **Copyright and Ownership**
>
> All of the content featured or displayed on this website including, but not limited to, text, graphics, photographs, images, moving images, sound, illustrations and software ("Content"), is owned by WizKids LLC, its licensors and/or its content providers.

\* \* \*

**Submissions**

> WizKids LLC's long-standing policy does not allow it to accept or consider creative ideas, suggestions, or materials other than those it has specifically requested. . . . If at our request you send certain specific submissions (e.g., postings to chat, boards, or contests) or, despite our request that you not send us any other creative materials, you send us creative suggestions, ideas, notes, drawings, concepts, or other information (collectively, the "submissions"), the submissions shall be deemed, and shall remain, the property of WizKids LLC. None of the submissions shall be subject to any obligation of confidence on the part of WizKids LLC, and WizKids LLC shall not be liable for any use or disclosure of any submissions. Without limitation of the foregoing, WizKids LLC shall exclusively own all now known or hereafter existing rights to the submission of every kind and nature throughout the universe and shall be entitled to unrestricted use of the submissions for any purpose whatsoever, commercial or otherwise, without compensation to the provider of the submissions.

(Pl. Motion Ex. B-3.)

These legal and copyright notices show that all content appearing on the BattleTech site was owned by WizKids, and that any solicited or unsolicited submission was to also be owned by WizKids.

All of this evidence constitutes express repudiation of co-ownership, starting the accrual time for Malcomson's claim as early as 2002, when his Revised Submission was allegedly accepted. *Ortiz*, 2008 WL 4449314, at *3–4.

### Point III

### Malcomson Cannot Establish Co-Ownership of the BattleTech Property

Even if Malcomson's co-ownership claim were not barred procedurally, his claim would still be barred substantively. A "joint work" is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. To establish that Malcomson was a "joint author" with WizKids, there must be: (1) a copyrightable work; (2) two or

more authors; and (3) the authors must intend their contributions be merged into inseparable or interdependent parts of a unitary whole. *Aalmuhammed*, 202 F.3d at 1231.

In his motion, Malcomson fails to adequately explain how or why he should be considered a joint owner of the BattleTech Property. (Pl. Motion at 7.) But his claim appears to be that: (1) the March 29, 1993 letter from Sam Lewis; (2) the statement in the Submission Guidelines that FASA would ensure that "your idea merge cleanly into the game story for which you are writing"; and (3) the posting of his works on the BattleTech site; merged his work into the BattleTech Universe, establishing his joint ownership of not only the ELH content, but the *entirety* of the BattleTech Property. (Pl. Motion at 1–2; Ebert Aff. Ex. H at 28:7–25; 30:1–31:7; 109:8–112:19; 146:10–14; 149:3–14.)

Joint ownership entitles the co-owners to equal, undivided interest in the entire work. *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998). Though contributions by each author need not be equal, "each such contribution must, in any event, be more than *de minimis*." 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 6.07 at 6-20 (1st ed. 2008) (Emphasis in original).

Here, Malcomson's Submission and Revised Submission are equivalent to a sentence in a book, or one frame in a movie, relative to the scale of the BattleTech Property. The BattleTech Property consists of over 100 novels and over 300 source books and rule books, in which ELH itself is only treated or mentioned in passing less than 20 times; and there are many other properties, such as computer and video games, role-playing games, collectible card games, and an animated television series, in which Malcomson's works are not incorporated at all. (SOF ¶¶ 2, 11.)

In *Picture Music, Inc. v. Bourne, Inc.*, 314 F. Supp. 640 (S.D.N.Y.), *aff'd*, 457 F.2d 1213 (2d Cir. 1972), the purported co-owner took a song from a cartoon movie and adapted it into a popular song. *Id.* at 647. The contribution there was much greater than

-9-

what Malcomson did here, and the court still found no joint ownership. *Id.* Given Malcomson's *de minimis* contribution, co-ownership does not exist as a matter of law.

In any event, to determine joint ownership, the Ninth Circuit looks for three factors: (1) whether Malcomson "superintended" the work; i.e., exercised control; (2) whether there was an objective manifestation of a shared intent by the alleged co-authors to be co-authors; and (3) whether the audience appeal turns on both contributions, and is difficult to appraise the share of each in its success. *Aalmuhammed*, 202 F.3d at 1234.

For the second element, the relevant intent is "intention at the time the writing is done that the parts be absorbed or combined into an integrated unit." *Thomson*, 147 F.3d at 199; *Childress v. Taylor*, 945 F.2d 500, 509 (2d Cir. 1991) (the "touchstone" of determining intent is the parties' intent "at the time the writing is done."). Although intent is usually a question of fact, summary judgment may be granted when the record is devoid of any evidence suggesting joint ownership. *Segal v. Paramount Pictures*, 841 F. Supp. 146, 147, 150 (E.D. Pa. 1993) (dismissing a 1983 suit by a *Star Trek* fan who submitted an unsolicited manuscript to Paramount Pictures claiming joint ownership of a 1991 *Star Trek* movie), *aff'd*, 37 F.3d 1488 (3d Cir. 1994).

In *Aalmuhammed v. Lee*, plaintiff Aalmuhammed was hired to assist in making the movie *Malcolm X*. 202 F.3d at 1229. Aalmuhammed sought credit as co-writer and filed a lawsuit seeking joint ownership in the film. *Id.* at 1230. The Ninth Circuit found that he was not a joint owner, because he did not exercise any control; and neither Aalmuhammed, nor Spike Lee (the film director), nor Warner Brothers objectively manifested an intent to be coauthors. *Id.* at 1235. Specifically:

> Warner Brothers required Spike Lee to sign a "work for hire" agreement, so that even Lee would not be a co-author and co-owner with Warner Brothers. It would be illogical to conclude that Warner Brothers, while not wanting to permit Lee to own the copyright, intended to share ownership with individuals like Aalmuhammed who worked under Lee's control, especially

-10-

ones who at the time had made known no claim to the role of co-author.

*Id.* at 1235.

Applying the same factors, Malcomson is not a joint owner of the BattleTech Property. The very nature of Malcomson's Submission, which was submitted "on-spec," meant that FASA had all control because it "retain[ed] the option to reject the work even after [Malcomson] [] submitted the complete manuscript." (SOF ¶ 14.) As shown by the letters between him and FASA from 1993 to 1996, FASA superintended Malcomson's Submission, with Malcomson exercising little or no control over his work. (SOF ¶ 18.)

Second, there is no objective manifestation of a shared intent to be co-authors. FASA rejected Malcomson's work in 1996. And third, there is no evidence in the record to suggest that Malcomson's Submission had any audience appeal.

The same analysis applies to the Revised Submission. Malcomson fails to produce the alleged agreement between him and WizKids regarding the Revised Submission. (SOF ¶ 22.) There is no evidence that Malcomson superintended the work by exercising control. To the contrary, the legal notice page on the BattleTech site stated that solicited or unsolicited fan submissions "shall be deemed, and shall remain, the property of WizKids LLC," and "WizKids LLC shall exclusively own all now known or hereafter existing rights to the submission of every kind and nature . . . and shall be entitled to unrestricted use of the submissions . . . without compensation to the provider of the submissions." (Pl. Motion Ex. B-3.)

There is also no evidence of a shared intent to be co-owners. Preliminarily, given that the relevant intent here is the pre-concerted intent by the alleged co-authors at the time of creation, the intent of WizKids (as assignee) of the BattleTech Property should not matter at all, because FASA, the original owner, has affirmatively exhibited an intent *not* to become co-owners by rejecting his work. *See* 1 Nimmer on Copyright, §§ 6.03,

-11-

6.06 n.3 (1st ed. 2008) (noting that *Shapiro, Bernstein & Co. v. Jerry Vogel Music Co.*, 221 F.2d 569 (2d Cir. 1955), which ruled that joint ownership could be found even when the assignor-owner had not intended to become co-owners if the assignee so intended, is "clearly overruled with respect to works created after January 1, 1978, the effective date of the current Copyright Act."); *see also Picture Music*, 314 F. Supp. at 646–647.

But even if WizKids's intent mattered, Malcomson does not identify any evidence that WizKids—much less evidence that he himself—intended to be co-owners at the time of creation. Here, *Malcomson* repudiated co-ownership by registering his work in *his* name only, while *disclaiming* any rights in the BattleTech Property.[3] (SOF ¶ 30.) He also admitted that, until he moved to amend the complaint in February 2009, he did not regard his work to be a joint work. (SOF ¶ 31.) He also testified at his deposition that "[a]t the time of the filing [of the original complaint], I did not believe that I was a co-owner of BattleTech." (SOF ¶ 31.) Given these admissions, Malcomson cannot show that he intended, at the time the work was created, to be joint owners with WizKids.

Malcomson may claim that being credited for his writing on the BattleTech site is evidence of the parties' joint owner status. (Pl. Motion at ¶ 2.) But the way parties credit themselves is not determinative of co-authorship intent. *Childress*, 945 F.2d at 508; *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 969 (9th Cir. 2008) (although plaintiff was given "screen credit as the creator of the original story and characters," other countervailing evidence showed that there was no objective manifestation of co-ownership intent).

---

[3] Malcomson alleges that he is in the process of amending his copyright registration to reflect joint ownership. (Pl. Motion at ¶ 3.) But such an amendment would not alter the fact that there is no objective evidence of intent to become joint owners, and does not change the fact that he himself did not regard himself as joint owner at the time of creation, which is what is relevant.

-12-

In *Thomson v. Larson*, the Second Circuit ruled against a plaintiff who brought joint ownership rights over the play *Rent*. Plaintiff claimed that her being credited as the "dramaturg" on the final page of the *Rent* scripts indicated a co-authorship intent. 147 F.3d at 203. But the court found that this billing did not indicate co-authorship, given other scripts that contained defendant as the sole author. *Id.* at 203–204. "[A]s [plaintiff] argues, it may indeed have been highly unusual for an author/composer to credit his dramaturg with a byline, we fail to see how [defendant's] decision to style her as 'dramaturg' on the final page in *Rent* scripts reflects a co-authorship intent on the part of [defendant]." *Id.* at 204.

Here, the isolated instance of WizKids crediting Malcomson for his Revised Submission is not objective evidence of a shared intent of co-ownership. Malcomson was credited only on two pages of the BattleTech site, but the copyright notice on every page, including on these pages, listed only WizKids as the copyright owner. And even after Malcomson's Revised Submission appeared on the BattleTech site in 2002, WizKids continued to register works under its name only. (SOF ¶ 29.)

Evidence of how WizKids treated other writers is also indicative of how it viewed the issue of co-authorship. *Larson*, 147 F.3d at 204 ("Just as the parties' written agreements with each other can constitute evidence of whether the parties considered themselves to be co-authors . . . so the parties' agreements with outsiders also can provide insight into co-authorship intent, albeit to a somewhat more attenuated degree.").

All writers for BattleTech, including the original writer of the ELH, Boy F. Petersen, Jr., have been, and continue to be required to transfer any copyright interest to FASA/WizKids under work for hire agreements. (SOF ¶¶ 8, 12, 26.) Indeed, Petersen and other writers for the Mercenary's Handbook, as well as writers for *A Game of Armored Combat*, were given a "Writing" credit in a manner similar to Malcomson, but

-13-

none of them co-owns the works because all intellectual property rights had to be transferred to FASA as employer for hire (and are now owned by WizKids). (SOF ¶ 12.)

Similarly, the "Book Packager Agreement" that Randall Bills entered into with WizKids in 2004 specifically provided that Bills would be "credited for the Work on the cover and title page of the published Work as follows: 'Randall Bills'." (SOF ¶ 27.) But the agreement provided elsewhere that Bills's work was a work for hire; that he "assigns and agrees to assign exclusively to WizKids, Inc., all rights to such contributions, including, without limitation, all copyrights . . . "; and that "[WizKids] will copyright the Work in the name of WizKids, Inc." (SOF ¶ 27.)

Furthermore, none of the other individuals listed above Malcomson's name on the general credits page on the BattleTech site, such as Bills, or Loren Coleman, then freelance author of BattleTech; co-own the BattleTech Property with WizKids. (Pl. Motion Ex. B-1; SOF ¶ 28.) "It would be illogical to conclude that [WizKids], while not wanting to permit [Boy Petersen, or Randall Bills] to own the copyright, intended to share ownership with individuals like [Malcomson] . . . especially ones who at the time had made known no claim to the role of co-author." *Aalmuhammed*, 202 F.3d at 1235. Otherwise, WizKids is joint owners with hundreds of authors, which is not the case.

As to the third factor, there is no evidence in the record to show that Malcomson's Revised Submission had audience appeal. Given how minute ELH is within the overall BattleTech Universe, however (SOF ¶ 11), any contribution would be *de minimis*.

**Point IV**

**<u>Malcomson's Work is an Unauthorized Derivative Work</u>**

Not only is Malcomson not a joint owner of the BattleTech Property, his works are unauthorized derivative work that is infringing on WizKids's copyright. A "derivative work" is defined under 17 U.S.C. § 101 as "a work based upon one or more preexisting

works . . . in which a work may be recast, transformed, or adapted. . . ." Under 17 U.S.C. § 106(2), the right to prepare a derivative work is an exclusive right owned solely by the copyright owner; here, WizKids.

Persons who create an unauthorized derivative work cannot complain that the owner of the original work copied or used his work. *Pickett v. Prince*, 207 F.3d 402, 405–407 (7th Cir. 2000) (finding that plaintiff's guitar in the shape of Prince's symbol infringed on Prince's copyright and dismissing plaintiff's infringement suit, holding that "Pickett could not make a derivative work based on the Prince symbol without Prince's authorization even if Pickett's guitar had a smidgeon of originality."); *Anderson v. Stallone*, No. 87-0592 WDKGX, 1989 WL 206431, at *8, 11 (C.D. Cal. April 25, 1989) (a script submitted by *Rocky* movie fan infringed on Sylvester Stallone's copyright in the movie series because plaintiff lifted Stallone's characters "lock, stock, and barrel from the prior Rocky movies," and holding that "section 106(2) most certainly precludes the author of an unauthorized infringing derivative work from suing the author of the work which he has already infringed.").

Here, Malcomson, as he admitted in his deposition, lifted portions of the Mercenary's Handbook verbatim.[4] (SOF ¶ 16.) The original text from the Mercenary's Handbook pervades Malcomson's Submission, and the Revised Submission also directly copies a fair portion of the Mercenary's Handbook and lifts the characters and relationships "lock, stock, and barrel" from the pre-existing BattleTech material. (SOF ¶¶

---

[4] Malcomson may not claim he had permission to copy the Mercenary's Handbook. (Pl. Motion at 6, l. 18–26.) An "on-spec" assignment is not the same as giving permission. While Malcomson testified at his deposition that he had permission, he was unable to name who gave that permission, and he also testified that "I did absolutely not believe I had any rights to that material [i.e., FASA's copyrighted works] because it had not been published with authorization of the company." (SOF ¶ 16.) Thus, by his own admission, he never had permission.

17, 23.) Malcomson's works, therefore, constitute unauthorized derivative works. If anyone has violated anyone's rights, it is Malcomson who is liable for copyright infringement.

### Conclusion

For the reasons stated above, Topps respectfully requests that this Court deny Malcomson's motion for summary judgment and grant Topps's cross-motion.

RESPECTFULLY SUBMITTED THIS October 5, 2009.

ALTFELD BATTAILE & GOLDMAN, P.C.

INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP

/s/ John F. Battaile
*Attorneys for Defendant*

The foregoing was electronically filed on October 5, 2009 by Elena C. Todd

/s/ Elena C. Todd
Elena C. Todd

The foregoing was mailed via overnight mail on October 5, 2009 by Mioko C. Tajika to:

Scott Malcomson
450 N. Hall
Mesa, Arizona 85203

/s/ Mioko C. Tajika
Mioko C. Tajika

-16-