X FILED ___ LODGED
___ RECEIVED ___ COPY
OCT 13 2009
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY Z DEPUTY

Scott Malcomson
450 N. Hall
Mesa, Arizona 85203
(602) 323-7458
calbeck@yahoo.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Scott Malcomson,<br>Plaintiff,<br>v.<br>The Topps Company, Inc.,<br>Defendant. | NO. CV08-2306-PHX-GMS<br>**Plaintiff's Reply Memorandum in Support of its Motion for Summary Judgement and in Opposition to Defendant's Cross-Motion for Summary Judgement** |

Plaintiff Scott Malcomson, in accordance with LRCP 56.1(d)-(e), submits this Reply Memorandum in response to Defendant The Topps Company's Opposition to Plaintiff's Motion for Summary Judgement, and in opposition to its Cross-Motion for Summary Judgement. This Reply will use the same reference abbreviations provided by Defendant in its Local Rule 56.1(a) Statement of Facts.

SUMMARY OF ARGUMENT

For purpose of this Motion only, Defendant has stated that it assumes WizKids posted Plaintiff's Works to the Battletech website (Defendant's Opposition to Plaintiff's Motion for Summary Judgement and its Cross-Motion for Summary Judgement ("Def. Opp."), FN2). Defendant asserts that Plaintiff has improperly sued the wrong company, that Plaintiff's Works were unauthorized derivations, that Plaintiff ceded WizKids all rights to his submissions, that Plaintiff cannot show intent on the part of WizKids to enter into a co-ownership of Battletech, that the appropriate statutes of limitation expired prior to Plaintiff's filing of Complaint, that Plaintiff's Work does not qualify as establishing a co-ownership of Battletech in accordance with various factors, and that Plaintiff's Works are "de minimis", and therefore below the notice of law. Plaintiff will show that these claims are contradicted by fact and law.

REGARDING PLAINTIFF'S STATEMENT OF FACTS

Plaintiff acknowledges he did not file a Statement of Facts separate from his Motion for Summary Judgement. Plaintiff acted in belief that the language of LRCP 56.1(a) meant that the Motion, Statement of Facts, and Memorandum of Law were to be divided into segments. Plaintiff does not claim this belief comprises an excuse for his error, but cites FRCP 61: "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Plaintiff's Statement of Facts appears within the Motion, labeled clearly as "Essential Material Facts" in the format LRCP 56.1 otherwise required (Pl. Motion paragraphs 1, 2, 2A, 2B, 3). These Facts were clearly available for Defendant to assess, and so Plaintiff's error has not affected Defendant's substantial rights. This does, however, amount to at least a minor inconvenience for Defendant, who elected not to respond to any of the asserted Facts and therefore would normally be treated as having admitted to them. Plaintiff believes it would best serve the cause of justice to treat all paragraphs within Plaintiff's Statement of Facts as being disputed, except where Defendant has expressly admitted otherwise in responding. The remainder of this Reply shall abide by that ideal, while recognizing that it does not bind the determination of the Court regarding this matter in any way.

DEFENDANT'S CLAIM OF PLAINTIFF SUING WRONG COMPANY

Despite Defendant's claim to the contrary (Def. SOF para. 7), Topps has not shown that it disclosed its relationship with WizKids to Plaintiff. Defendant cites only one fact to support this claim: that Plaintiff was aware of "...FASA's sale of the Battletech property to WizKids". This sale took place in March 2001 (Gasper Aff. Exhibit A T0093), more than two years prior to Topps' purchase of WizKids in June 2003 (Gasper Aff. para. 3), so fails to demonstrate any knowledge by Plaintiff of Topps' relationship to WizKids.

Plaintiff first attempted to resolve this matter by sending a letter to "Legal Department, WizKids, 2002 156th Ave NE, Bellevue, WA 98007", of which he has retained the Certified Mail return card. The card, signed for by Sarah Phariss, is postmarked "25 Oct 2007". A second such letter, also sent to WizKids "c/o Legal Dept.", was also signed for by Sarah Phariss, with the postmark on the return card reading "28 Jul 2008" (copies of both sides of each return card attached as Exhibit D). Plaintiff has requested Defendant produce "copies of any document relating to communications of any type, be it voice, written, or electronic, which occurred between Plaintiff and any persons employed by WizKids or that company's licensees" as well as "Topps' Legal Department incoming call list, September - November 2008" (Plaintiff's Request for Production, paras. 1,2 at 3-4). Defendant has stated that it "...does not have any [such]

documents in its possession, custody or control" (Defendant's Responses to Plaintiff's Request for Production page 3 para. 5). Defendant did not claim any such records had been lost. The incoming call list for Topps' Legal Department was required to show Plaintiff made numerous calls to Topps during the period requested, this being one month after his July 2008 letter to WizKids and continuing up until shortly after Topps made its decision to close WizKids in November 2008 (Gasper Aff. para. 3). Defendant "admits that Plaintiff contacted Topps...and admits that WizKids' business operations were closed by Topps." (Answer to First Amended Complaint para. 7), which also speaks against Defendant's subsequent assertion that WizKids made the closure decision, and that it only affected a "...portion of its operations" (Gasper Aff. at 3). The record therefore shows that Plaintiff first approached WizKids for resolution, redirecting his inquiries to Topps only after being ignored. Plaintiff was subsequently ignored by Topps prior to filing this action in December 2008, one month after Topps ordered WizKids to cease business operations. At no time did Topps make any effort to clarify its relationship to WizKids, or which company actually held the Battletech Property, until Defendant's response to this Motion.

Plaintiff's action therefore comes against Topps as a result of non-communication by Topps and its subordinate company, combined with Topps' November 2008 closure of WizKids. Plaintiff reasonably concluded that, as the owner of WizKids, Topps owned the Battletech Property once it had closed its subordinate company. Defendant's failure to make any attempt to clarify matters otherwise, prior to this juncture, has prevented Plaintiff from joining WizKids in this action as a co-defendant. Plaintiff also notes that his claim solely pursues recognition of a pre-existing copyright. As no claim of compensation for the use of Plaintiff's copyrights is being asserted, it cannot be supported that Plaintiff is seeking damages from Defendant.

DEFENDANT'S CLAIM OF PLAINTIFF'S WORKS BEING UNAUTHORIZED DERIVATIONS

FASA allowed the inclusion of its copyrighted material in its co-development with Plaintiff of the "Eridani Light Horse Scenario Pack" (Pl. Motion Exhibit A), and did not request it be removed (Ebert Aff. Ex. G T0069). The matter of the second edition of the Work is less debatable, as Defendant has already admitted for purposes of this Motion that WizKids published Plaintiff's Work to the website. *Georgia v. South Carolina*, 497 U.S. 376 (1990) stated, "Inaction alone may constitute acquiescence when it continues for a sufficiently long period". In this case, FASA and WizKids acquiesced in the use of the copyrighted material, in works they respectively co-developed and published, for three years each. Plaintiff asserts both periods were sufficiently long to demonstrate acquiescence. Therefore, while Plaintiff's Works were certainly derivative, they were just as certainly authorized.

DEFENDANT'S CLAIM THAT PLAINTIFF CEDED ALL RIGHTS TO HIS SUBMISSIONS

Defendant misconstrues WizKids' website "Submissions" policy (Def. Opp. page 8 para. 1), in asserting that Plaintiff's submission of Work made it WizKids' property. Defendant's citation is reliant on the phrase, "...if at our request you send...submissions". Defendant, however, does not show that WizKids made any such requests. Plaintiff has already asserted (Amended Complaint for Relief paras. 5, 6) that WizKids' original 2001 publication of his Work was done without notice or permission, and that he "offered to submit a revised edition of the work under the same terms. WizKids accepted" as part of the agreement reached in 2002. While Plaintiff has only shown circumstantial evidence of these facts, he does not need to show any, as it is Defendant who wishes to show that a specific company policy applied to Plaintiff's submissions. Defendant must therefore show that WizKids requested Plaintiff's submissions, and has not.

There is also the matter that while an agreement and signature can both be electronic in nature, 15 USC 7001(c)(2)(B) states "If a law... expressly requires a record to be provided or made available by a specified method that requires verification or acknowledgment of receipt, the record may be provided or made available electronically only if the method used provides verification or acknowledgment of receipt (whichever is required)." The necessary record of copyright transfer requires both acknowledgement of receipt and verification in the form of a signature as per 17 USC 204(a). 15 USC 7006(5): "The term "electronic signature" means an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." Defendant has not shown that ClassicBattleTech.com provided means of either acknowledgement or verification. Defendant has not therefore shown that WizKids' "Terms" met the requirements of law needed to transfer a copyright.

DEFENDANT'S CLAIM OF NO INTENT BY WIZKIDS TO BECOME CO-OWNER

Defendant asserts that there can be no claim by Plaintiff "...that WizKids expressed its intent to become co-owners when it posted his Submission on the BattleTech site", but provides no support. *Aalmuhammed v. Lee* 202 F.3d 1227 (9th Cir. 2000) states: "The best objective manifestation of a shared intent... is a contract...In the absence of a contract, the inquiry must of necessity focus on the facts." *Gaiman v. McFarlane* 360 F.3d 644 (7th Cir. 2004) presented a situation closely resembling that now facing the Court: "McFarlane decided to invite four top writers each to write the script for one issue of Spawn. One of those invited was Gaiman. He accepted the invitation and wrote the script for Spawn issue No. 9. Their contract, made in 1992, was oral. There was no mention of copyright, nor, for that matter, of how Gaiman would be compensated...Gaiman's work for him was not work made for hire...And while Gaiman

could have assigned to McFarlane his copyright in any work he did under the oral contract, copyright assignments must be in writing, 17 U.S.C. § 204(a); Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 413 (7th Cir. 1992), and there was no written assignment." Clearly, McFarlane did not express an intent for Gaiman to become co-owner in any part of Spawn, but this did not prevent Gaiman from being a co-owner of some kind, which the Court ultimately ruled he was. In the absence of an contract specifically outlining the nature of Gaiman's relationship with McFarlane, the nature of his copyrights and co-ownership were established by the acts of publication. Plaintiff holds the same to be true here; that WizKids' intent can also be inferred by the fact that, as Plaintiff has shown (Pl. Motion paras. 2, 2B, Exhibits B-1, B-2, B-4, B-5), his Work was commingled into a larger body of works copyrighted to WizKids.

DEFENDANT'S CLAIM OF PUBLICATION POLICY AS BAR TO INTENT OF CO-OWNERSHIP

Defendant cites testimony of Randall Bills, as grounds to establish that a specific policy at WizKids could be used to infer its actual intent at the time of publication. Bills states: "For content to be considered "canon" means that it has been adopted as the official version of the Battletech Universe. Before any work can become canon, the writer of the canon material had to transfer all intellectual property rights to FASA." (Bills Aff. para. 6). Also, "As with the practice at FASA, all Battletech writers entered into work for hire agreements with WizKids under which any intellectual property rights were transferred to WizKids, and the intellectual property in all canon materials also had to be transferred to WizKids." (Bills Aff. para. 8) Bills' statements define two separate policies: one at FASA, whereby a work could not become canon without a transfer of rights to the company, and one at WizKids, where transfers of rights took place as a specific function of work-for-hire agreements. Because the WizKids policy was specific to works made for hire, it cannot be inferred that it applied to any other form of relationship. To retroactively apply a work-for-hire policy, to a work NOT made for hire, would violate Plaintiff's right of consent. Defendant does not address Plaintiff's citation of Warner Doles' statement that Plaintiff's Work was published as canon (Pl. Motion Ex. B-7), except to state that the citation is equivocal. In absence of facts showing that someone other than Doles operated the website at the time WizKids published Plaintiff's Works, this speaks objectively to WizKids' intent.

DEFENDANT'S STATUTE OF LIMITATIONS CLAIM: FASA'S REPUDIATIONS OF PLAINTIFF

All purported repudiations by FASA of Plaintiff's co-ownership in Battletech are moot, as Plaintiff's claim is based on WizKids' actions. FASA's statements of intent (Ebert Aff. Ex. F) are not considered by Plaintiff to have been binding instruments, and do not need to be, as they are presented only to demonstrate intent at time of creation and evidence of foreknowledge by Randall Bills of this intent.

DEFENDANT'S STATUTE OF LIMITATIONS CLAIM: FASA'S LAWSUIT AGAINST PLAINTIFF

Malcomson's Rebuttal in this suit (Ebert Aff. Ex. G T0026) expressly rejected that he was asserting a "contractural relationship" and instead concerned purported breaches of good faith by FASA (Ebert Aff., Exhibit G T0038). Despite the fact that Malcomson filed his Rebuttal within the time allowed by the court's rules, a week before FASA filed its Motion for Judgement by Default (Ebert Aff. Ex. G T0080), the court took no notice of the Rebuttal in ruling for the Motion on the same day it was submitted (Ebert. Aff. Ex. G T0082). A week later, on August 10, 2000, Cook County of the State of Illinois redacted the court's rules for setting aside default judgements. Plaintiff notes that FASA President Morton Weisman appeared in this suit, in the form of a recording of a telephone conversation between himself and Malcomson, which the court duly transcribed into the record (Ebert Aff., Exhibit G T0073). In this conversation, Weisman states: "I talked with Russ (Babcock) today...giving the developers instructions to give you an opportunity to write something for us...I told you we would. We obviously made some sort of commitment to do that in the past...we made a commitment, we'll do it." This is of course entirely at odds with FASA's claim that it owed Malcomson no obligations of any kind; Plaintiff requests the Court bear this in mind while assessing the current Motion.

DEFENDANT'S STATUTE OF LIMITATIONS CLAIM: WIZKIDS' NON-PAYMENT OF ROYALTIES

WizKids' non-payment of royalties did not serve as "plain and express" repudiation, as Plaintiff could not have reasonably recognized it as such. Plaintiff understood the definititon of a joint work under 17 USC 101 required intent that its contributions be merged into a unity. He did not know of any objective proof of such intent prior to discovery of FASA's 1996 Submission Guidelines (Ebert Aff. Ex. G T0071), believing therefore that he qualified only as a "contributor to a collective work" per 17 USC 201(c). This status would not net him royalties, and as such he did not claim any. A copyright claim "accrues when a plaintiff knows of the potential violation or is chargeable with such knowledge." (*Bridgeport Music, Inc.*, 376 F.3d at 621). Defendant has argued that Plaintiff believed he was not a co-owner (Def. SOF para. 31). It cannot therefore argue that Plaintiff's failure to demand royalties, which he was not aware he was owed, constituted "plain and express repudiation".

DEFENDANT'S STATUTE OF LIMITATIONS CLAIM: WIZKIDS' PURPORTED LIMITATION OF ACCREDITATION

Defendant claims, without support, that the phrase "for the ELH writeup" restricts Plaintiff to a claim for that work only. Yet if a contributing author's acknowledgement of the credentials of another could be construed as a denial of a joint work, none could exist.

DEFENDANT'S STATUTE OF LIMITATIONS CLAIM: WIZKIDS' NOTICES OF COPYRIGHT AND OWNERSHIP

Defendant presents a section from the legal notices on the Battletech website dated June 10, 2002 as a bar to Plaintiff's claim (Def. Opp. page 7, para. 2), but takes no notice that it clearly states material on the site is "owned by WizKids LLC, its licensors and/or its content providers". Plaintiff provided WizKids LLC with content. As such this section does not bar, but protects, his ownership. The remaining notice-of-copyright defenses are solidly opposed in *Gaiman*: "The function of copyright notice is to warn off copiers, 17 U.S.C. §§ 401(d), 405(b), 406(a); *Fantastic Fakes, Inc. v. Pickwick International, Inc.*, 661 F.2d 479, 486-87 (5th Cir. 1981); *Fleischer Studios, Inc. v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 277 (2d Cir. 1934), not to start the statute of limitations running...Remember that a claim inconsistent with the copyright holder's interest sets the statute running, and in particular circumstances a notice indicating that the defendant was the sole copyright holder might amount to such a claim. But not when the work is a compilation...The creator of a compilation is entitled to copyright it as long as it's a work "formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101; see also § 103. The compiler's copyright entitles him to reprint the contents of the compilation in future editions of the compilation. 17 U.S.C. § 201(c); *New York Times Co. v. Tasini*, 533 U.S. 483, 493-97 (2001). But all the other rights of copyright remain in the authors of the contributions, provided the contributions satisfy the criteria of copyrightability. Therefore the compiler's copyright notice is not adverse to the contributors' copyrights and so does not put them on notice that their rights are being challenged. On the contrary, "a single copyright notice applicable to the collective work as a whole serves to indicate protection for all the contributions in the collective work, except for advertisements, regardless of the ownership of copyright in the individual contributions and whether they have been published previously." *United States Copyright Office, Circular No. 3: Copyright Notice 3* (2004); see *Sanga Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756, 759-60 (2d Cir. 1995); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1469 (9th Cir. 1988), aff'd under the name *Stewart v. Abend*, 495 U.S. 207 (1990)." WizKids compiled Plaintiff's Works into a larger collection of interlinked Battletech fiction (Pl. Motion, Exhibits B, B-2). WizKids' copyright notices therefore did nothing more than provide protection for the compilation. This has the effect of asserting, not denying, Plaintiff's copyrights, as part of the compilation.

DEFENDANT'S STATUTE OF LIMITATIONS CLAIM: WIZKIDS' AND PLAINTIFF'S COPYRIGHT REGISTRATIONS

Again, solidly opposed as a means to start the clock running in *Gaiman*: "In addition to the copyright notices, McFarlane registered copyright on the issues and the books. But to suppose that by doing so he provided notice to Gaiman...is again untenable. Authors don't

consult the records of the Copyright Office to see whether someone has asserted copyright in their works; and anyway McFarlane's registrations no more revealed an intent to claim copyright in Gaiman's contributions, as distinct from McFarlane's own contributions as compiler and illustrator, than the copyright notices did...All that is important in this case is that it is no more the purpose of registration to start statutes of limitations running than it is the purpose of the copyright notice itself to do so...What the Act actually says is that recording a document in the Copyright Office gives constructive notice of the facts in the document if the document identifies a registered work. 17 U.S.C. § 205(c). The purpose is to establish priority in the event of disputes, in bankruptcy court or elsewhere, over creditors' rights. In re *World Auxiliary Power Co.*, 303 F.3d 1120, 1125-27 (9th Cir. 2002); *Broadcast Music, Inc. v. Hirsch*, 104 F.3d 1163, 1165-67 (9th Cir. 1997); *3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright* § 10.07 (2003). A creditor who wants to know whether he can seize a debtor's copyright consults the register; a co-author does not."

Defendant also fails to support its claim that Plaintiff has any "burden" to "discharge" regarding copyright registration of the 1996 version of his Work, as no conflict in that work's copyright is in issue. Defendant admits the second version of this excerpt has been registered, and it is the Plaintiff's need to confirm the copyright status of this work which has given rise to Plaintiff's amended action. Records already presented to Defendant by Plaintiff during discovery show that Plaintiff moved to file his copyright in November 2007 (attached as Exhibit E). The USCO did not complete processing the registration until March 2009. It is clear that Plaintiff took action to protect his copyright as early as 2007. Defendant has not shown that Plaintiff could, or should, reasonably have known his copyrights were being violated prior to December 2005, the minimum point beyond which a statute of limitations defense could apply.

REGARDING FACTORS OF JOINT OWNERSHIP

Defendant cites *Aalmuhammed v. Lee* 202 F.3d 1227 (9th Cir., 2000) as a bar to Plaintiff's claim, asserting that the 9th Circuit adopted a specific formula for determining joint ownership in a work: exercise of control in the alleged author's work, an objective manifestation of shared intent by the alleged co-authors, and whether audience appeal turns substantively on both contributions. But the decision in *Aalmuhammed* insisted that: "The factors articulated in this decision and the Second and Seventh Circuit decisions cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much." The factors, themselves, were immediately prefaced by: "...several factors suggest themselves as amongst the criteria for joint authorship, in absence of a contract." The terms "suggest" and "amongst" do not argue for a formulaic approach.

*Aalmuhammed* also seems to disagree with Defendant's position to a significant extent in drawing heavily on the US Supreme Court's decision in *Burrow-Giles Lithographic Co. v. Sarony* 111 U.S. 53 (1884), specifically the USSC's definition therein of "author". In *Burrow-Giles* it was determined that the author of the work was the photographer, Napoleon Sarony. Sarony had posed his subject before the camera, suggested his expression, and selected the costume, background and accessories to create a composition. It was this control that Sarony exercised, over the subject matter comprising the work, which accorded him status as its author. Defendant presents no evidence FASA met any similar criteria, instead defining "control" as resting almost entirely in "option to reject", and otherwise in letters between FASA and Plaintiff which Defendant purports to demonstrate Plaintiff had "little or no control over his work" (Def. SOF 18). Rejection, however, does not create a work, or any part of a work. *Gaiman* directly opposes Defendant, in that McFarlane also held the same "option to reject" over Gaiman's submissions. Gaiman nonetheless prevailed. Only one of the letters to which Defendant refers (Ebert Aff. Ex. G at T0066-T0070) contains any creative input from FASA whatsoever (Ebert Aff. G T0069). This letter makes five brief requests regarding changes to the work, indicating a complete reversal of Defendant's claim; that it was FASA which exercised "little or no control" over Plaintiff's original work.

Defendant also errs in saying Plaintiff's claim is predicated in any way on a letter from Sam Lewis. Plaintiff's Motion for Summary Judgement makes no mention of that letter, much less any assertion that it would support a co-ownership claim. Nor does Plaintiff claim that the 1996 FASA Submission Guidelines (Pl. Motion, Ex. A-1) do other than demonstrate original intent, as well as knowledge of that intent on the part of Randall Bills. These facts are intended to assist in assessing the intents of FASA and Plaintiff at the time the "Eridani Light Horse Scenario Pack" was created, as well as WizKids' later intent in publishing a second version of Plaintiff's Work.

SHARED INTENT

*Aalmuhammed's* insistence that "In the absence of a contract, the inquiry must of necessity focus on the facts" supports Plaintiff's case for co-ownership. WizKids published Plaintiff's Work, openly adopting it as canon. According to the testimony of Randall Bills, if a given portion of Battletech fiction is "canon", it has been "adopted as the official version of the Battletech Universe" (Bills Aff. 6). WizKids' decision to post the Work in a place reserved for canon material, commingling Plaintiff's Work with other canon material in the process, as well as the affirmation of then-site operator Warner Doles (Pl. Motion Ex. B-7) that the purpose of its being posted in that place was because it was canon, supports Plaintiff's claim that his Work was "adopted as the official version of the Battletech Universe."

Defendant insists Plaintiff's is barred from claiming ownership by his own testimony (Def. SOF 31). This is opposed by a reading of the passage in context: "At the time of the filing [of the copyright claim in November 2007], I did not believe that I was a co-owner of Battletech. I believed only that I owned specific portions of my own work as a contributor to a collected work as defined under USC 17 Section 101." (Ebert Aff. Ex. H at 91:20-24) Seen in whole, Plaintiff's belief was clearly based on his understanding of copyright law and the facts available to him as of November 2007, which did not include objective proof of an intent to merge at the time of creation. As Plaintiff believed objective proof was required to make such a claim, he did not do so. After filing his Complaint, Plaintiff began the process of discovery, found the 1996 FASA Submission Guidelines (Ebert Aff. Exhibit G T0071), and concluded that they provided objective proof of a co-ownership claim. Plaintiff asserted this change in understanding by amending his Complaint to include language referring to the Submission Guidelines, which Plaintiff then presented as objective proof of original intent to merge (Motion to File an Amendment to Complaint for Relief para. 4). It is now the understanding of Plaintiff that objective proof is not necessarily a requirement.

In 2002, FASA was not an owner of Battletech. Defendant's citation of *Picture Music, Inc. v. Bourne, Inc.*, 314 F. Supp. 640 (S.D.N.Y. 1970) to support a defense based on an assignor-owner relationship in this case is inapplicable. Defendant also claims that to allow Plaintiff to assert co-ownership in Battletech would mean "WizKids is joint owners with hundreds of authors" (Def. Opp. page 14 para. 3 line 17) which is obviously not the case, as all other authors were engaged in work-for-hire contracts.

AUDIENCE APPEAL

*Aalmuhammed* limited the value of this factor to reference of *Edward B. Marks Music v. Jerry Vogel Music* 140 F.2d 266, 267 (2nd Cir., 1944)(Hand, J.) modified by, 140 F.2d 268 (1944). Plaintiff does not claim on this basis, but on basis of demonstrable facts in law.

DEFENDANT'S DE MINIMIS CLAIM

Defendant states Plaintiff holds no copyright in his Works, asserting that Plaintiff has infringed copyright (Def. Opp. para. 16). This removes the matter from "de minimis", in that there must be clarification regarding rights in the disputed Works. Though Defendant brings up the relative scope between the whole of Battletech and Plaintiff's Works, *Gaiman* speaks against such comparisons as being cause for "de minimis". Gaiman's writings comprised the descriptions of three characters, scripts for five comic books, and part of a a sixth. The totality of the Spawn Property, worth far more than Battletech, dwarfed Gaiman's contributions in the same way.

In support, Defendant cites only *Picture Music, Inc. v. Bourne, Inc.* 314 F.Supp. 640 (S.D.N.Y. 1970). While this case was affirmed in 457 F.2d 1213 (2nd Cir., 1972), the higher court ruled on "done for hire" grounds, refusing to affirm the "de minimis" ruling. *Feist v. Rural* 499 U.S. 340 (1991) applied the doctrine to contributions within a whole: "copyright protects only those constituent elements of a work that possess more than a de minimis quantum of creativity." The concern, then, is whether or not Plaintiff contributed enough original copyrightable expression in his own Works. There is no concern or interest under the law for comparing contribution sizes.

As such, "de minimis" does not apply. Exhibit A in the Motion for Summary Judgement, being the original 1993 version of the "Eridani Light Horse Scenario Pack", contains 29 pages of original text and graphics in addition to the "History" segment. Whether calculating by the four-page "History" which appears in the 1993 version, or the seven-page version which WizKids actually posted in 2001 (Pl. Motion Ex. B), Plaintiff's original material in that work exceeded 80%. Exhibit B-2 in the Motion for Summary Judgement, being the revised version of the excerpted "History", amounts to 14 pages of single-spaced text. Of this, Defendant has identified slightly more than one page as comprising material copyrighted to WizKids. Plaintiff's original material in this Work therefore exceeds 90%.

CONCLUSION

Had WizKids not elected to publish the Work, it could not be said that the company approved the publication. Had they placed it in the designated "Fan Submissions" area, rather than in an area reserved for canon fiction, it could not be said that it had been adopted as part of the "Battletech Universe". Had they engaged Plaintiff in a work-for-hire or other contractural arrangement, they could have dictated terms of copyright ownership. Had they made any statement at any time prior to the company's closure denying the legitimacy of the Work, that would be one thing. But they did not. It could be said that the choices the copyright owners made were unwise. But the law does not seek to protect entities from the consequences of unwise decisions, except in cases of specific malfeasance. None exists here. As such, Plaintiff reaffirms his request: that this Court find in favor of his Motion for Summary Judgement.

RESPECTFULLY SUBMITTED THIS OCTOBER 12, 2009.

SCOTT MALCOMSON, Plaintiff, filed *pro se*, 450 N. Hall, Mesa, Arizona 85203, (602) 323-7458

Certificate of Service: I certify that a copy of the foregoing Reply Memorandum, as well as copies of all Exhibits attached, was served on Defendant, in the person of Mioko Tajika, of Ingram Yuzek Gainen Carroll & Bertolotti, LLP, 250 Park Avenue, New York, New York 10177 this October 12, 2009.

Exhibit D

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Legal Department
Wizkids
2002 156th Ave NE
Bellevue, WA 98007

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X [signature] ☐ Agent ☑ Addressee

B. Received by (Printed Name) Sarah Pham
C. Date of Delivery 10-25-07

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7007 0710 0000 6048 7218

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wizkids LLC
c/o Legal Dept.
2002 156th Ave (#300)
Bellevue, WA 98007

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) Sarah Pham
C. Date of Delivery 7/29/08

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Arti... (Tra...

PS Fo... 102595-02-M-15...

...ED STATES POSTAL SERVICE SEATTLE WA 981 29 JUL 2008 PM 3 L

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Scott Malcomson
4520 E. Baseline (#1072)
Phoenix, AZ 85042

UNITED STATES POSTAL SERVICE SEATTLE WA 981 25 OCT 2007 PM 7 T

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Scott Malcomson
4520 E. Baseline
#1072
Phoenix, AZ 85042

Exhibit E

**Check Details**
**Date : 02/29/2008 09:18:11**
**IRN : 150917770226800009989**

| | | | |
|---|---|---|---|
| **Status** | Retired | **ALC or DSSN Code** | 0000798503 |
| **Capture Date** | 02/23/2008 | **Received Date** | 02/23/2008 12:54:01 |
| **Account** | 004376894331 | **Bank Routing Number** | 122101706 |
| **Check Number** | 0111 | **Check Amount** | $45.00 |
| **Batch ID** | [redacted] | **Cashier ID** | [redacted] |
| **Check Type** | Personal | **Processing Mode** | Not Present |
| **215/Deposit Ticket Number** | 002362 | **5515/Debit Voucher Number** | 002389 |
| **Settlement Date** | 02/26/2008 00:00:00 | **Return Settlement Date** | 02/28/2008 00:00:00 |
| **ReferenceNumber** | 00250894193 | | |

SCOTT ALAN MALCOMSON 11-06 111
602-488-8716
7625 N. 19TH AVE. APT 107
PHOENIX, AZ 85021-7035

DATE 11/16/07 91-170/1221 AZ 7586

PAY TO THE ORDER OF Register of Copyrights $ 45 00

Forty Five and 00/100 DOLLARS

Bank of America

ACH R/T 122101706

FOR

⑆122101706⑆ 004376894331⑈0111

LC COPYRIGHT
0 025 089 419 3