**ALTFELD BATTAILE & GOLDMAN, P.C.**
250 North Meyer Avenue
Tucson, Arizona 85701
Tel:(520) 622-7733
Fax:(520) 622-7967
JFBattaile@abgattorneys.com
John F. Battaile, ASB No. 4103

**Ingram Yuzek Gainen Carroll & Bertolotti, LLP**
250 Park Avenue
New York, New York 10177
Tel: (212) 907-9600
Fax: (212) 907-9681
DEbert@ingramllp.com
MTajika@ingramllp.com
David G. Ebert
Mioko C. Tajika
*Admitted Pro Hac Vice*

*Attorneys for Defendant, The Topps Company, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Scott Malcomson, | NO. CV08-2306-PHX-GMS |
| Plaintiff, | **DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| The Topps Company, Inc., | |
| Defendant. | |

Defendant, The Topps Company, Inc., submits this Reply in Further Support of its Cross-Motion for Summary Judgment against *pro se* plaintiff Scott Malcomson.

Malcomson argues that he has no burden to prove that he registered his first Submission,[1] as he presents no such proof. (Plaintiff's Reply Memorandum in Support of its Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for

---

[1] Topps will use the same abbreviations used in its Defendant's Opposition to Plaintiff's Motion for Summary Judgment and its Cross-Motion for Summary Judgment ("Def. Opp. and Cross-Motion").

Summary Judgment ("Pl. Reply") at 8.)[2]  He also fails to present any evidence to show that he actually created the Submission.

Contrary to Malcomson's assertions, as a movant, he must show the basis for his motion and the absence of a genuine issue of material fact. *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 980 (D. Ariz. 2008).  And, on cross-motions for summary judgment, "'each movant has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor.'" *Lamberton v. Shalala*, 857 F. Supp. 1349, 1351 (D. Ariz. 1994) (citation omitted).  Thus, to the extent that Malcomson is basing his co-ownership claim on the Submission, his inability to adduce any evidence of his creation of it is fatal.

Malcomson also claims he "does not need to show any [evidence]" that the WizKids submission policy (which provided that all fan submissions became WizKids's property) on the BattleTech site did not apply to him. (Pl. Reply at 4.)  Topps has shown that the policy is a general one applying to both solicited and unsolicited works. (Def. Opp. and Cross-Motion at 8.)  If Malcomson is claiming that he is an exception to the general rule, then it is his burden on summary judgment to show that he falls under such exception.  But Malcomson fails to produce the alleged agreement he had with WizKids regarding the "acceptance" of his work as canon, and his retention of all rights. (SOF ¶ 22.)  Thus, there is no evidence to support Malcomson's argument on this issue.

Malcomson also alleges that WizKids's canon policy cannot apply to relationships other than works for hire (and also falsely assumes that this is a retroactive policy). (Pl. Reply at 5.)  Topps submitted an affidavit from Randall Bills, a former employee of FASA and WizKids, who has written for BattleTech, and who is currently serving as the BattleTech Managing Developer, attesting that "[b]efore any work can become canon, the

---

[2] Malcomson's Reply is written in miniscule font size in violation of LR Civ. 7.1(b).

-2-

writer of the canon material had to transfer all intellectual property rights to WizKids." (SOF at 8 n.4.) But Malcomson fails to present any evidence to show how this policy does not apply to him. Moreover, even if Malcomson were correct that the canon policy only applied to work for hire arrangements, his mere allegation that his work was not for hire does not make him co-owner of the BattleTech Property.

**Point I**

**The Statute of Limitations Have Expired on**
**Both the Submission and the Revised Submission**

Malcomson argues that FASA's act of repudiation is "moot," because his claim is based on WizKids's actions. He further attempts to side-step FASA's 2000 default judgment against him by citing to a conversation that he allegedly had with FASA's Morton Weisman (which Malcomson apparently surreptitiously tape-recorded), who promised him an "opportunity" to write something. (Pl. Reply at 6; *see also* Ebert Aff. Ex. G at T 0027.)

But FASA's repudiation does matter to the extent Malcomson is basing his claim on the Submission. And as explained in Topps's prior papers, unlike infringement actions, for which a new claim accrues with each separate infringing act, the statute accrues only once on a co-ownership claim. *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996). Thus, the unequivocal rejection of his Submission by FASA in 1996 defeats Malcomson's co-ownership claim based on the Submission. Morton Weisman's alleged promise does nothing to change the fact that FASA rejected his Submission in 1996, and reiterated its rejection by suing him in 2000. (SOF ¶¶ 18–19.)

As for the Revised Submission, Malcomson argues that WizKids's failure to pay royalties cannot serve as express repudiation, because he did not believe he was entitled to any. (Pl. Reply at 6.) But the law in this Circuit is to the contrary, as exemplified in *Silva v. Sunich*, No. CV 03-9327 (GPS) (CMW), 2006 WL 6116645, at *6 (C.D. Cal.

-3-

Sept. 6, 2006), where the court found that plaintiff's 2003 co-ownership suit expired because he knew in 1997 that defendant was publicly selling the goods at issue without paying him royalties. *See also Ortiz v. Guitian Bros. Music Inc.*, No. 07 Civ. 3897 (RWS), 2008 WL 4449314, at *4 (S.D.N.Y. Sept. 29, 2008); *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000).

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615 (6th Cir. 2004), cited by Malcomson, is inapposite. That case turned on the statute of limitations on an infringement (not a co-ownership) action and, in any event, in that case the court found the infringement claim had expired. *Id.* at 621–623.

Moreover, that Malcomson did not believe he was entitled to any royalties because he did not regard himself as co-owner at the time of creation only proves his lack of intent to become a joint owner.

Malcomson also alleges that the function of a copyright notice is to warn copiers, and not to start the statute running. (Pl. Reply at 7.) But the case that he relies on for this proposition, *Gaiman v. McFarlane*, specifically recognized that the statute starts running when someone acts inconsistently with the copyright holder's interest, and that "[t]here may be situations in which the notice just happens to put a copyright owner on notice that someone is acting in derogation of his rights." 360 F.3d 644, 653 (7th Cir. 2004). *See also Ortiz*, 2008 WL 4449314, at *3; *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315–1316 (S.D.N.Y. 1997).

And, the *Gaiman* court refused to recognize the copyright notice as triggering the statute because the work in question was a compilation. 360 F.3d at 653. Copyright notice on a compilation protects the compiler's copyright in that particular compilation only; the copyrights in individual contributions are owned by the individual authors. *Id.* at 653–654. Thus, the compiler's copyright notice is not adverse to the individual

-4-

contributors' copyrights, and they are not put on notice that their rights are being challenged. *Id.*

Here, the BattleTech works are not a compilation where individual contributions are separately owned by each contributor. All the individual contributions are owned by WizKids as employer for hire. (SOF ¶¶ 8, 26.) Malcomson's deposition testimony shows that he is well aware that all BattleTech writers transfer their intellectual property rights to WizKids. (Ebert Aff. Ex. H at 22:25–23:8.)

"A copyright owner must be 'reasonably diligent.'" *Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.M.b. & Co.*, 448 F. Supp. 2d 244, 259 (D. Mass. 2006) (citation omitted), *aff'd*, 510 F.3d 77 (1st Cir. 2007). Given the context of the parties' relationship—involving Malcomson's prior litigation with WizKids's predecessor; his familiarity with WizKids's practices; and his zealous attempt to become a BattleTech writer—WizKids's act of placing its name exclusively on the copyright notice, even after Malcomson's Revised Submission was allegedly "accepted" in 2002, should have put him on notice as it is an assertion by WizKids of exclusively authorship. Such a claim is adverse to Malcomson's allegation that he jointly owns the BattleTech Property.

In opposition to Topps's argument that the copyright registration in WizKids's name only serves to start the statute running, Malcomson again cites *Gaiman* to assert that the purpose of the copyright registration is not to start the statute running. (Pl. Reply at 7–8.) But publicly available information at the U.S. Copyright Office has been held to be a sign of repudiation. *Cambridge*, 510 F.3d at 90; *Ortiz*, 2008 WL 4449314, at *4. Even if registration alone may not serve to put Malcomson on notice, that fact in combination with non-payment of royalties, and the copyright notice in WizKids's name only, serves

-5-

to provide Malcomson with ample notice as to WizKids's claim of exclusivity, which is adverse to Malcomson's co-ownership claim.

Accordingly, the statute of limitations has expired on both Malcomson's Submission and Revised Submission.

## Point II

### Malcomson Fails to Adduce Any Evidence of Joint Ownership

Malcomson fails to show that any of the three *Aalmuhammed v. Lee* factors is in his favor. 202 F.3d 1227, 1234 (9th Cir. 2000). Malcomson's argument that FASA exercised no control over his Submission is simply wrong. (Pl. Reply at 9.) The entire submission was "on-spec", i.e., FASA had all control because it "retain[ed] the option to reject the work even after [Malcomson] [] submitted the complete manuscript." (SOF ¶ 14.) As demonstrated by the correspondence from 1993 to 1996, FASA kept telling Malcomson that his work was under review, evincing control on the part of FASA. (SOF ¶ 18.) This process was not co-development, like Malcomson appears to believe, but a one-sided effort by Malcomson to try to get FASA to accept his Submission. But ultimately, FASA rejected his Submission on September 18, 1996. (SOF ¶ 18.)

Malcomson's citation to *Gaiman* is misplaced. Malcomson believes that the defendant in Gaiman "did not express an intent for Gaiman to become co-owner in any part of Spawn [the work in question], but this did not prevent Gaiman from being a co-owner of some kind . . . ." (Pl. Reply at 5.) But in *Gaiman*, there was ample evidence of co-ownership intent. Gaiman was invited to, and did write a script creating three new characters from scratch; was promised to be treated "better than the big guys"; received royalties in recognition of his contributions that were worth about the same as what competitors would have paid him; and defendant even referred to him as a "co-creator" of the works in the royalty reports. 360 F.3d at 649–652.

-6-

The key distinction is that Gaiman's work was *accepted*, not *rejected* like Malcomson's Submission. Malcomson did not create the ELH from scratch; he was not promised anything other than an opportunity to write, which was given; he did not receive any royalties from FASA; and he was never once referred as a co-creator of the BattleTech Property. Malcomson is unable to present any evidence that comes even remotely close to the evidence that Gaiman presented to make a case for co-ownership.

As for the Revised Submission, the only evidence that Malcomson cites in support of his claim is that it was posted on the BattleTech site, and that he was given writing credit. (Pl. Reply at 6, 9.) But even if Malcomson's Revised Submission was "accepted," he fails to show how his work falls outside of WizKids's general submission policy, which provided that solicited or unsolicited fan submissions "shall be deemed, and shall remain, the property of WizKids LLC," and "WizKids LLC shall exclusively own all now known or hereafter existing rights to the submission of every kind and nature . . . and shall be entitled to unrestricted use of the submissions . . . without compensation to the provider of the submissions." (Def. Opp. and Cross-Motion at 11.)

Malcomson also fails to explain why, if his work was canon, it was removed from the BattleTech site in August 2005 and has not reappeared since. And Malcomson fails to address the point made in Topps's prior papers that, if Malcomson was deemed a co-owner of the entire BattleTech Property for being credited for the ELH write-up only, why were other authors (such as Boy F. Petersen Jr., who wrote the original ELH literature in the Mercenary's Handbook; or Randall Bills, who authored many novels and sourcebooks) also credited for their writings but are not co-owners of BattleTech. (Def. Opp. and Cross-Motion at 13–14.)

"A co-author knows that he or she jointly created a work from the moment of its creation." *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (citation omitted); *see also*

*Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) (the relevant inquiry is the "intention at the time the writing is done that the parts be absorbed or combined into an integrated unit."); *Childress v. Taylor*, 945 F.2d 500, 509 (2d Cir. 1991) (the "touchstone" of determining intent is the parties' intent "at the time the writing is done."). This inquiry is "particularly important where 'one person . . . is indisputably the dominant author of the work and the only issue is whether that person is the sole author or she and another . . . are joint authors.'" *Thomson*, 147 F.3d at 202 citing *Childress*, 945 F.2d at 508. WizKids is undoubtedly the dominant author of the BattleTech Property, necessitating a stronger showing of the parties' co-ownership intent at the time of creation. But Malcomson's reply only further proves that he did not believe he co-owned the works in question at the time he created his works. (Pl. Reply at 6, 10.)

Malcomson asserts that his belief was limited by his "understanding of copyright law and the facts available to him as of November 2007, which did not include objective proof of an intent to merge at the time of creation." (Pl. Reply at 10.) But the laws and facts available then and now have not changed. Malcomson's February 2009 motion to amend the complaint was filed before Topps produced any discovery (as Malcomson did not serve discovery requests until June 2009). (D.I. # 17, Motion to Amend Complaint, D.I. # 33, Request for Production by Plaintiff.) Malcomson relies as "objective proof" on the 1996 FASA Submission Guidelines[3] (Pl. Reply at 6, 10), but the submission policy provided that:

> Any work you do for us will be done on spec. This means you will work with us to develop the project, write the manuscript and submit it to us for approval without receiving a contract. We retain the option to reject the manuscript even after you have submitted it.

---

[3] It is unclear whether the 1993 or 1996 Submission Guidelines govern here, but the relevant portions of the Guidelines from both years are essentially the same. (SOF ¶ 14.)

-8-

(Ebert Aff Ex. F at 3 (under the heading "Acceptance and Payment/First-Time Writers".) This generic submission policy, which reserved FASA's rights and which applied to an indiscriminate audience, does nothing to prove FASA's, much less WizKids's, intent to jointly own the entire BattleTech Property with Malcomson.

Finally, Malcomson's argument that his work was not *de minimis* is meritless. First of all, Malcomson does not provide any evidence that the work annexed as Exhibit A to his summary judgment papers were ever used by FASA or WizKids, so it cannot form the basis of his claim. As for Malcomson's Submission and Revised Submission, in determining the quality or quantity of his alleged contribution, any contribution must be assessed relative to the overall BattleTech Property, and not just to the original ELH literature in the Mercenary's Handbook from which he copied. Thus, Malcomson's claim that his original material exceeds 80% or 90% relative to the original ELH literature in the Mercenary's Handbook is irrelevant (and grossly inaccurate in any event). (Pl. Reply at 11.)

As shown in Topps's prior papers, the ELH is treated or fleetingly mentioned less than 20 times in a total of over 100 novels and over 300 source books and rule books. (SOF ¶ 11.) Thus, the ELH comprises less than 5% of this one segment of the overall BattleTech Property, which still includes other properties such as computer games, video games, card games, animated television series, and other projects. (SOF ¶ 2.) Malcomson's contribution comprises even less than 5% because his work is based on just one source book, the Mercenary's Handbook, from which the bulk of his Submission, and a fair portion of the Revised Submission, directly copies. (SOF ¶¶ 17, 23.) By any measure—both qualitatively and quantitatively—Malcomson's contribution was *de minimis*.

## Conclusion

For the reasons stated above and in Topps's prior papers, Topps respectfully requests that this Court deny Malcomson's motion for summary judgment and grant Topps's cross-motion for summary judgment.

RESPECTFULLY SUBMITTED THIS October 30, 2009.

                                              ALTFELD BATTAILE & GOLDMAN, P.C.

                                              INGRAM YUZEK GAINEN CARROLL &
                                              BERTOLOTTI, LLP

                                               /s/ John F. Battaile
                                              *Attorneys for Defendant*

The foregoing was electronically filed
and sent via U.S. Mail on October 30, 2009 to:

Scott Malcomson
450 N. Hall
Mesa, Arizona 85203


 /s/ Elena C. Todd
Elena C. Todd