FILED ___ LODGED
___ RECEIVED ___ COPY

NOV 0 2 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY                    Z  DEPUTY

Scott Malcomson

450 N. Hall

Mesa, Arizona 85203

(602) 323-7458

calbeck@yahoo.com

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

Scott Malcomson,

Plaintiff,

v.

The Topps Company, Inc.,

Defendant.

NO. CV08-2306-PHX-GMS

# Plaintiff's Response to Defendant's Report on Settlement Talks

Plaintiff Scott Malcomson respectfully submits this Response to Defendant's Report on Settlement Talks, which was improperly lodged by Defendant in violation of Case Management Order (Docket Index #20) and which contains numerous misrepresentations by Defendant.

The Court's Case Management Order (Docket Index #20) required that a Report on Settlement Talks be jointly filed by both Plaintiff and Defendant, after "all parties and their counsel" had met in person to "engage in good faith settlement talks". Plaintiff filed singly solely on basis that Defendant refused, in writing, to meet at all. Defendant only filed its Report in direct response to Plaintiff's filing, did so on 30 October while the deadline was still able to be met, and did so only to levy misrepresentations against Plaintiff.

1) Defendant alleges that Plaintiff submitted "selected portions of the parties' settlement

**1**

communications" in an effort to prejudice Topps, and in violation of Federal Rule of Evidence 408.

Rule 408, however, does not prohibit the presentation to the Court of this evidence. Prohibitions exist under 408 only "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction". Plaintiff does not present this evidence to prove anything concerning the validity or amount of a claim, nor concerning any inconsistent statement or contradiction.

This information is of interest to the Court in that it shows Defendant violating a Court order to meet with Plaintiff in person, as well as demonstrating that Defendant has no intention of conducting good faith negotiations at all. Plaintiff asserts that, in fact, the submitted communications represent virtually the whole of Defendant's actual negotiations to date. Defendant is invited to show otherwise.

As example, Plaintiff shows that he responded to an offer from Defendant counsel Ebert, for $15,000, with a refusal and a counter-offer. Plaintiff has no record of any response regarding this offer from Defendant, and asserts that Defendant's response in its Reports on Settlement Talks is in fact the first complaint by Defendant regarding that offer of which he is aware. Defendant, prior to its 30 October filing, simply did not respond to Plaintiff's offer at all. Plaintiff was therefore unaware that Defendant considered his offer "wholly unrealistic and overreaching". Defendant asserts that Plaintiff's offer made it impossible for the parties to reach a settlement, but provides no indication it ever made a counter-offer or that Plaintiff was unwilling to negotiate, much less that it informed Plaintiff his offer was not acceptable.

Underscoring the point is the fact that Defendant counsel Tajika responded to Plaintiff's insistence on meeting in person by stating that Defendant had made an offer to which Plaintiff had purportedly not responded --- when in fact, Ebert's rejected $15,000 offer was the last Plaintiff heard from Defendant.

Defendant insists that they decided not to meet with Plaintiff "based on our prior experience", which treats the Court's order to meet as though it were an optional inconvenience.

**2**

Finally, Defendant asserts that Plaintiff "fabricated" threats made to him. This can only refer to Defendant's suggestion to Plaintiff that he had committed a crime, while shortly thereafter making an offer for settlement, as Plaintiff has not alleged anything else which could be interpreted as a threat.

On review of the record, Plaintiff acknowledges that he erroneously claimed the suggestion was made by Defendant after taking Plaintiff's deposition. It was actually made *during* the deposition:

"Q Do you know what the penalty is for making a false statement on a copyright application is?

A I don't believe I've made a false statement.

Q I didn't ask whether you made one. I just asked you if you know what the penalties are for making a false statement in a copyright filing. Do you know?

A No, I don't.

MR. EBERT: Let's take a break. Take a five-minute break." (Ebert Aff. Ex. H, pg. 68)

This was preceded by Ebert's questioning of Plaintiff about his copyright filing, specifically its original exemption of "Battletech" from the copyright claim, an exemption made when Plaintiff erroneously believed his copyright only extended to being a "contribution to a collected work" (Ebert Aff. Ex. H, pgs. 62 - 67 inclusive).

But if Ebert believed that Malcomson had falsified his copyright registration by making Battletech *exempt* from it, this would require Defendant's chief counsel to support Plaintiff's claim of having some sort of copyright in Battletech. Otherwise Plaintiff's original filing could not have been false.

Plaintiff reminds the Court that this evidence has prevented Defendant from committing perjury, in that Defendant asserted in its Report on Settlement Talks that it was prepared to testify under oath that Plaintiff had fabricated what Defendant classifies as "threats supposedly made to him".

**3**

RESPECTFULLY SUBMITTED THIS 2 NOVEMBER 2009

_____

SCOTT MALCOMSON

*Plaintiff, filed pro se*

450 N. Hall, Mesa, Arizona 85203

(602) 323-7458

Certificate of Service

I certify that a copy of the foregoing was served on Defendant, in the person of counsel Mioko C. Tajika, of Ingram Yuzek Gainen Carroll & Bertolotti, LLP, 250 Park Avenue, New York, New York 10177 this 2 November 2009.