☒ FILED ____ LODGED
____ RECEIVED ____ COPY

NOV 0 2 2009

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ Z  DEPUTY

Scott Malcomson

450 N. Hall

Mesa, Arizona 85203

(602) 323-7458

calbeck@yahoo.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Malcomson,<br><br>Plaintiff,<br><br>v.<br><br>The Topps Company, Inc.,<br><br>Defendant. | NO. CV08-2306-PHX-GMS<br><br>**Plaintiff's Motion to Dismiss Defendant's Reply in Further Support of its Cross-Motion for Summary Judgment** |

In accordance with LRCP 56, Plaintiff hereby moves to have Defendant's Reply in Further Support of its Cross-Motion for Summary Judgment dismissed. Rule 56 allows for a Motion for Summary Judgement, a Reply to same, and a Response to the Reply. No further debate on the Motion is provided for, nor does Defendant provide any basis for such in law. Defendant also makes misleading statements.

On the possibility that the Court may nonetheless choose to allow Defendant's Reply to stand, Plaintiff responds, utilizing the same abbreviations as used in Defendant's Opposition to Plaintiff's Motion for Summary Judgment and its Cross-Motion for Summary Judgment as well as Plaintiff's Reply to same:

1) Defendant makes numerous misleading claims that Plaintiff's co-ownership claim is reliant upon his submission of the Eridani Light Horse Scenario Pack outline (Pl. Motion Ex. A) to FASA in 1993 - 1996. Plaintiff's contribution, however, was not merged with the Battletech Property at that time, and Defendant

has not shown otherwise.  Nor did FASA, at any time, challenge Plaintiff's copyrights to his original material, even in its 2000 lawsuit against Plaintiff, which merely asserted that FASA had no contractual or other obligations to Malcomson (Ebert Aff. Ex. G, T0024 at "a").  To the contrary, FASA acknowledged it held no control over any submissions save for its own copyrighted and trademarked property (Ebert Aff. Ex. F, pg. 3, column 2, para. 2).

FASA cannot therefore be said to have repudiated Plaintiff's copyrights in any manner, nor was Plaintiff required to treat FASA's decision not to further develop his Submission as repudiation of a nonexistent co-ownership claim.

2) Defendant makes numerous misleading claims that Plaintiff must show proof of "intent to co-own". None of Defendant's cited quotations, however, make such assertion, nor is intent to co-own referenced anywhere in United States Code Title 17.  The only mention of co-ownership is in 17 USC 201(a): "The authors of a joint work are coowners of copyright in the work."  The question, then, is whether or not Plaintiff qualifies as an author in a joint work.  This is defined by 17 USC 101: "A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."

There is no requirement whatsoever under law that the authors must intend to co-own.  Co-ownership is the default status of being an author in a joint work.  If the authors wish otherwise, they must enter into a contractural arrangement such as work-for-hire or ownership transfer (17 USC 201(b),(d)).

Nor do Defendant's citations assert otherwise.  *Gaiman v. McFarlane* 360 F.3d has one instance of McFarlane referring to Gaiman as a "co-creator", but not a co-owner.  McFarlane's promise to treat Gaiman "better than the big guys" was held by the Court to be a promise of payment, not of co-ownership. Nor did the fact that McFarlane made payments to Gaiman "worth about the same as what competitors would have paid him" imply intent to co-own, as the payments were in reference to work-for-hire rates at

those companies.  Gaiman reinforced this fact by billing McFarlane at DC Comics' work-for-hire rates.

Gaiman was held to be a co-owner on basis of the facts of publication, not on basis of any promises made by McFarlane, because their agreement was wholly an oral one.  Both parties asserted that they had not discussed divisions of copyright or ownership during this agreement.  Co-ownership therefore need not depend on either a written instrument, or on specific intent to co-own.  It is established by the act of creating a joint work, unless the parties make alternate arrangements.

Defendant's quotations of *Merchant v. Levy*, 92 F.3d 51, 56 (2nd Cir. 1991); *Thomson v. Larson*, 147 F.3d 195, 199 (2nd Cir. 1998); and *Childress v. Taylor*, 945 F.2d 500, 509 (2nd Cir. 1991), all reference intent to merge and/or the time at which the intent exists.  None reference "intent to co-own".

Plaintiff, however, very clearly intended his work to be merged into the Battletech game universe at the time of creation.  The works were directly derivative of Battletech and were submitted directly to the companies in charge of publishing Battletech materials for that express purpose.  The question is whether or not WizKids, which Defendant has already admitted, for purposes of this Motion, published Plaintiff's contribution (Ebert Aff. FN2), intended in so doing to merge the work into the Battletech Universe.

Defendant has asserted that WizKids' policy was that if a work were considered "canon" by the company, then it had been "adopted as the official version of the Battletech Universe" (Bills Aff., para. 6). By publishing contributions as canon, WizKids merged them into the Battletech Property, creating a joint work.   In all cases excepting that of Plaintiff, WizKids chose not to merge contributions except as works made for hire, so that while these persons were co-creators, they were not co-owners. The question then becomes a matter of whether or not WizKids published Plaintiff's contribution as canon.

Defendant asks how Plaintiff's work can be considered to have been published as canon, having been removed from the website in August 2005.  This ignores the fact that the work was published on the site for the three years preceding its removal, and it is the intent at the time the joint work is created which

concerns 17 USC 101. Did the removal serve as a repudiation of co-ownership? Not according to the remover, former ClassicBattleTech.com manager Jason "Deathshadow" Knight, who wrote a letter in May 2009 to Defendant (Pl. Motion Ex. B-10).

"I was contacted by a company representative to give credit to Mr. Malcomson, which was done, but upon review it was found that it was NOT the canon text from the 1987 handbook, so it was removed and replaced with in-house materiel. That particular decision was MINE...if it was not from a printed sourcebook we at the time did not want it on our site in the canon universe information." (emphasis in original) (Pl. Motion Ex. B-10, pg. 2, para. 9).

Knight was a volunteer, not employed by WizKids or any of its affiliates, who took over operation of the site "circa 2004" (Pl. Motion Ex. B-10, pg. 1, para 1). At that time, the site was "owned and operated by FanPro", Battletech's licensee, according to the site's "Terms and Conditions". In this context, it is clear that Knight acted in pursuit of a website content policy enacted by FanPro, not on behalf of WizKids. Knight asserts, as noted above, that no company personnel directed him to remove the work, that he had in fact been directed to credit Plaintiff for the work and did so, and that the work had been published "in the canon universe information". He does not assert that it was not published as canon, or that he was removing it from canon by removing it from the website.

This affirms WizKids published Plaintiff's work as canon,"adopted as the official version of the Battletech Universe" (Bills Aff., para. 6), regardless of Knight's later decision on behalf of FanPro.

3) Defendant misleads the Court in claiming that Plaintiff has not presented "evidence to show that he actually created the Submission". As shown in David Ebert's Affidavit (Ebert Aff., Ex. A), all segments of the 1996 "History" not circled were created by Plaintiff. Various of these segments also appear in the 2002 version, for which Plaintiff was accredited as author by WizKids (Pl. Motion, Ex. B-2). As a

**4**

specific example, the character of Major Kyle Sessions appears in both Submissions (Ebert Aff., Ex. A, pg. 2, para. 1; Pl. Motion, Ex. B-2, pg. 2, para. 4).

4) Defendant misleads the Court by insisting that "all fan submissions became WizKids's property" and that "the policy is a general one applying to both solicited and unsolicted works". As already shown (Pl. Motion, Ex. B-3, pg. 2, para. 5), the policy applies to specific submissions which WizKids requested. Defendant has not shown WizKids made any such request. Defendant ignores the fact that WizKids did not provide the minimal requirements under law for transfer of copyrights via the website, and therefore Plaintiff cannot have agreed to any such transfer, regardless of company policy.

5) Defendant falsely claims that Plaintiff "alleges that WizKids' canon policy cannot apply to relationships other than works for hire". It is Defendant, not Plaintiff, which has asserted that WizKids could not have meant to accept Plaintiff's work as canon because it was not a work made for hire. Defendant has not shown that WizKids' canon policy actually prohibited the company from canonizing works not made for hire.

Defendant then misquotes his own witness' Affadavit with the effect of swapping company policies: the actual quote (Bills Aff., para. 6) states, "Before any work can become canon, the writer of the canon material had to transfer all intellectual property rights to FASA." Defendant changed "FASA" to "WizKids". WizKids' actual policy was that "writers entered into work for hire agreements...under which any intellectual property rights were transferred to WizKids, and the intellectual property in all canon materials also had to be transferred to WizKids." As this was a policy specific to works made for hire, it cannot be asserted that it applied to works not made for hire.

Moreover, transfer of intellectual property is a civil right, not subject to involuntary imposition by a general company policy, and requiring a verifiably signed instrument to be effected per 17 USC 204(a). Defendant has failed to show the existence of any such verifiably signed instrument.

**5**

6) Defendant misrepresents the applicability of *Silva v. Sunich*, No. CV 03-9327(GPS)(CMW), 2006 WL 6116645 (C.D. Cal.) by simultaneously citing and ignoring the fact that the Court ruled on basis of the plaintiff having known that the defendant was selling goods without paying him royalties. Defendant does not show, or claim, that the plaintiff in *Silva* was unaware he had status to claim royalties. Nor does Defendant contest Plaintiff's claim to being unaware of such status in this action. A person who is unaware of a copyright status cannot be considered to have been served "plain and express repudiation" of that copyright merely through non-payment of royalties they do not know they are owed, nor does Defendant actually assert otherwise.

7) Defendant misrepresents the applicability of *Aalmuhammed v. Lee* 202 F. 3d 1227 (9th Cir. 2000), by asserting that is provides a means to deny co-ownership by examining a copyright holder's treatment of third parties. The Court's concern with Aalmuhammed's relationship to Warner Brothers and Spike Lee revolved around the fact that Lee had hired Aalmuhammed, but had himself been engaged by Warner Brothers as a work-for-hire. Lee did not hold any copyrights in the movie. As such, Aalmuhammed, as Lee's hire, could not hold any copyrights in the movie. This was the concern of the Court in terms of intent: could a copyright holder working with a work-for-hire intend to extend its copyright to employees of the work-for-hire? Clearly, the answer was no.

The current case differs in that Plaintiff's relationship was with the actual copyright holder. WizKids certainly had the right to create a joint work with Plaintiff, whereas Lee did not have the right to make Aalmuhammed a joint copyright holder in the movie even if he had wanted to.

8) Defendant falsely claims that "the Battletech works are not a compilation where individual contributions are separately owned by each contributor. All the individual contributions are owned by WizKids as employer for hire". Plaintiff has contributed to Battletech's canon fiction as other than a work-for-hire. WizKids in merging Plaintiff's contribution into the canon "Battletech Universe" created a compilation, where copyright in two or more contributions are held by separate authors.

9) Defendant misappropriates the term "reasonably diligent", asserting that Plaintiff should have assumed his copyright was being usurped by WizKids' copyright notices on basis of past experience. However, this again presumes that these copyright notices could have reasonably been construed as an actual denial of copyright. As the copyright notice was attached to a compilation, such notice comprises protection, not denial, of Plaintiff's copyright.

Defendant's "context" is also misguided: FASA's lawsuit claimed only that the company had no contractural or other obligations to Malcomson. It did not claim that Malcomson did not hold copyright in his original work. Defendant cites only two other things to support this "context": that Plaintiff was aware of WizKids' general practices, and that Plaintiff wanted to be a Battletech author. Neither of these facts indicate that Plaintiff should have expected to have his copyrights denied, nor does Defendant explain why they could or should have.

10) The 9th Circuit has held that a claim for a declaration of ownership under the Copyright Act does not accrue until "a 'plain and express repudiation of co-ownership is communicated to the claimant.' " Id. (quoting Zuill, 80 F.3d at 1369). Defendant, however, insists that repudiation should be found in means which are neither plain nor express, nor communicated to the claimant at all.

Absent a "plain and express repudiation" which Defendant can demonstrate was "communicated to the claimant", Defendant has fallen back on New York court decisions which conflict the 9th and 7th Circuits.

11) Defendant ignores Plaintiff's citations of *Aalmuhammed* regarding the 9th Circuit's specification that its "three factors" were suggestions meant as neither formulaic nor limited in themselves. Defendant nonetheless seeks a formulaic and limited interpretation of these factors against Plaintiff.

Defendant asserts that "on-spec" and "option to reject" equate to "exercise of control" in a work, which Plaintiff has already countered with specific citations which Defendant does not address, choosing instead merely to repeat his prior definition of "control". This definition clearly does not match that used by either the 9th in *Aalmuhammed* or the US Supreme Court in *Burrow-Giles Lithographic v. Sarony* 111 U.S. 53

(1884), which is used to refer to the person "who has actually formed the picture by putting the persons in position, and arranging the place where the people are to be - the man who is the effective cause of that".

Neither "option to reject", nor the status of a submission as being "on speculation", nor mere "review", constitutes authorship because they do not actually form a picture. They instead provide the framework, within which the author "has actually formed the picture". Plaintiff was "the effective cause of that", while FASA limited itself to editorial, not creative, input.

12) Defendant claims Plaintiff did not co-develop with FASA, ignoring Plaintiff's citation of FASA's 1996 Submission Guidelines (Ebert Aff. Ex. F), "if we like your proposal you will be contacted by one of our developers...to ensure that your ideas merge cleanly into the game universe". This contradicts Defendant's claim of "a one-sided effort by Malcomson to try to get FASA to accept his Submission".

13) Defendant misleads the Court by claiming that Plaintiff's Submission was rejected. Defendant has already admitted for purposes of this Motion that WizKids did indeed publish Plaintiff's second Submission (Ebert Aff. FN2). This constitutes acceptance, not rejection, of a heavily-revised edition of a work which FASA, an unaffiliated company with no control over WizKids, had previously rejected. Defendant nonetheless insists on attempting to redefine Plaintiff's claim to co-ownership as stemming from FASA's 1996 rejection, as opposed to WizKids' 2002 acceptance and publication.

14) Defendant falsely claims that Plaintiff has not addressed why other Battletech authors such as Randall Bills or Boy F. Petersen could not be considered co-owners of Battletech: Plaintiff has pointed out these persons were engaged under work-for-hire contracts; Plaintiff was not (Pl. Motion, pg. 7, para. 3).

15) Defendant's citation of *Merchant v. Levy* 92 F.3d 51 (2nd Cir. 1996) asserts that "a co-author knows that he or she jointly created a work from the moment of its creation". This does not however imply

8

that a co-author would necessarily know, or correctly interpret, the definitions in law regarding their work.

Plaintiff clearly knew and understood that he had created his work to be integrated into the Battletech game universe, and that WizKids had so integrated it, and so therefore understood that a joint work had been created. It does not follow that Plaintiff knew at that time how 17 USC 101 defined "joint work", nor is it reasonable to claim that Plaintiff obtained knowledge of 17 USC's definitions of copyright prior to obtaining belief that his copyrights might have been violated.  Neither is it reasonable to assume that, once having obtained knowledge of 17 USC 101's copyright definitions, years after the actual publication, that Plaintiff would of necessity have interpreted them correctly in absence of missing data.

The definition of "joint work" per 17 USC 101 requires intent to merge by all involved parties.  A reasonable person could conclude that objective proof of such intent was required in order to levy a claim of co-authorship in a joint work.  Absent objective proof, a reasonable person could conclude that their work did not qualify, under the law, as part of a joint work.

None of this mitigates the facts: Plaintiff clearly wrote his works to be integrated into the Battletech Universe, and WizKids elected to publish them as such. This satisfies the requirements of 17 USC 101 regarding definition of a joint work, whether Plaintiff correctly understood copyright law at the time or not.

16) Defendant erroneously claims that the facts available to Plaintiff between November 2007 and now did not change, and bases this claim on the fact that Topps did not provide Plaintiff any discovery material prior to June 2009.  Plaintiff in fact discovered this material in boxes of old records, copies of which he provided to Defendant in February 2009, and which Defendant has presented as Ebert Aff., Exhibit F.

Regardless of whether or not the rediscovered Guidelines constituted objective proof of FASA's intent to merge Plaintiff's work with Battletech, the issue of concern is whether or not Plaintiff reasonably believed that lack of such proof prevented him from claiming co-ownership.  Rather than address this question, Defendant once again derails into insisting that Plaintiff must prove intent by FASA or WizKids to co-own Battletech, but cites no supporting authorities.

**9**

17) Defendant derails the issue of "de minimis" into a question of whether or not FASA or WizKids used the complete outline of the Eridani Light Horse Scenario Pack (Pl. Motion Ex. A). Plaintiff has not alleged that use of the Scenario Pack forms any part of the basis for his claim, as Defendant suggests.

Defendant proceeds to restate its earlier claim that Plaintiff's work must be assessed on "de minimis" by comparison to the Battletech Property as a whole, ignoring entirely Plaintiff's citations of the 7th Circuit and US Supreme Court in contradiction of Defendant's assertion. Defendant also claims, without support, that Plaintiff's assessment of the percentage of original material in his Submissions is "grossly inaccurate".

18) Defendant falsely claims that Plaintiff's first Submission to FASA copied "the bulk" of its content from the 1987 "Mercenary Handbook". This is amply demonstrated by Plaintiff's presentation of the 1993 version of that Submission (Pl. Motion Ex. A), which Defendant ignores. Instead, Defendant claims that Plaintiff's Submission was wholly composed of only the Historical section of that Submission, the 1996 version of which WizKids excerpted from Plaintiff's first Submission for use online without authorization. Defendant chooses to treat this theft of Plaintiff's intellectual property as if it had been a "Submission".

For these reasons and those cited in Plaintiff's other papers in this Motion, Plaintiff requests the Court approve Plaintiff's Motion for Summary Judgement and deny Defendant's Cross-Motion.

RESPECTFULLY SUBMITTED THIS  2 NOVEMBER 2009

_____
SCOTT MALCOMSON
*Plaintiff, filed pro se*
450 N. Hall, Mesa, Arizona 85203
(602) 323-7458

Certificate of Service

I certify that a copy of the foregoing was served on Defendant, in the person of counsel Mioko C. Tajika, of Ingram Yuzek Gainen Carroll & Bertolotti, LLP, 250 Park Avenue, New York, New York 10177 this 2 November 2009.

**10**