**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SCOTT MALCOMSON, | No. CV-08-2306-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| THE TOPPS COMPANY, INC., | |
| Defendant. | |

Pending before the Court are the Motion for Summary Judgment (Dkt. # 46) filed by Plaintiff Scott Malcomson ("Malcomson") and the Cross-Motion for Summary Judgment (Dkt. # 53) filed by Defendant The Topps Company, Inc. ("Topps"). For the following reasons, the Court grants summary judgment in favor of Topps and denies Malcomson's motion as moot.

## BACKGROUND[1]

On December 12, 2008, Malcomson filed a *pro se* complaint against Topps, claiming ownership of a piece of intellectual property known as the "BattleTech Property." The BattleTech Property is a war-gaming and science fiction franchise based on a futuristic civil

---

[1] Because Malcomson did not present to the Court a separate statement of facts as required by Local Rule 56.1(a), the recitation of facts here is derived primarily from Topp's Statement of Facts in Opposition to Malcomson's Motion for Summary Judgment. (*See* Dkt. # 54.) Nevertheless, the recitation of facts contains only those facts that are not disputed by either party.

war in the thirty-first century. It is comprised of computer and video games, role-playing games, collectible card games, over one-hundred novels, over three-hundred source books and rule books, and an animated television series. Malcomson alleges that the BattleTech Property is a joint work, which he co-owns.

FASA Corporation ("FASA") is the original developer and owner of the BattleTech Property. In the early 1990s, Malcomson submitted to FASA a proposed idea for a novel, which FASA chose not to develop. In rejecting his proposal, FASA suggested that Malcomson consider writing some gaming materials and suggested that he work on a project involving one of BattleTech's fictional characters, the Eridani Light Horse ("ELH"). FASA, however, did not contract for Malcomson's work on the ELH project. Instead, Malcomson was invited to submit a proposal "on spec" for FASA's consideration, meaning that "FASA retain[ed] the option to reject the work even after [Malcomson] submitted" his completed manuscript. (*See* Dkt. # 54 at ¶ 14.) In 1993, Malcomson submitted his proposed ELH manuscript (the "Submission"), and from 1993 to 1996, FASA and Malcomson exchanged several letters about the content of the Submission. In September 1996, however, FASA, determined not to publish Malcomson's Submission.

In 2001, FASA transferred its intellectual property rights over the BattleTech Property to WizKids LLC, which later became WizKids, Inc. ("WizKids"). Around this same time, Malcomson's rejected Submission appeared on BattleTech's fan website, which was owned by Fantasy Productions LLC ("FanPro") and operated pursuant to a licensing agreement between WizKids and FanPro. At this time, the website was operated by BattleTech fans who volunteered their time. Once Malcomson learned that his Submission had been posted on the website, he contacted WizKids and threatened legal action. In response, WizKids allegedly offered "formal accreditation" of Malcomson's contribution, "acceptance of [Malcomson's] work as 'canon,'[2] and retention of [Malcomson's] pertinent rights" to the Submission. (Dkt.

---

[2] To be "canon" means that the work has been adopted as the official version of the BattleTech Universe.

# 30 at ¶ 6.) As part of this alleged agreement, which is not contained in the record, Malcomson was also allowed to submit a revised version of his ELH manuscript (the "Revised Submission"). This alleged agreement, however, did not provide Malcomson with any payment or royalties from WizKids for either the Submission or the Revised Submission. Because the record contains no admissible evidence of the alleged agreement, it cannot be considered for purposes of this Order.

The Revised Submission appeared on the BattleTech website until August 2005, when it was removed by FanPro. After the Revised Submission was removed, Malcomson filed suit against Topps, which purchased WizKids in 2003,[3] alleging in his Amended Complaint that Topps, through WizKids, violated his intellectual property rights by posting the Submission and the Revised Submission. (Dkt. # 30.) Because these Submissions were posted on the BattleTech website, Malcomson now seeks a declaration that he co-owns the entire BattleTech Property with Topps. (*Id.*) In March of 2008, prior to bringing this claim, Malcomson obtained a copyright registration on his Revised Submission—the registration is in Malcomson's name alone. (Dkt. # 55, Ex. E.) And, while Malcomson has obtained a copyright over the Revised Submission, his Amended Complaint does not allege a claim for copyright infringement against Topps. (Dkt. # 30.)

Following discovery, Malcomson moved for summary judgment on his joint ownership claim. (Dkt. # 48.) In response to Malcomson's motion, Topps filed a Cross Motion for Summary Judgment, arguing that Malcomson is not a co-owner of the BattleTech Property. (Dkt. # 53.)

---

[3]In its Cross-Motion for Summary Judgment, Topps argues that Malcomson brought suit against the wrong party since WizKids, rather than Topps, owns the BattleTech Property. (Dkt. # 43 at 4.) Malcomson, however, argues that he was unable to sue the correct party because Topps did not tell him who owned the BattleTech Property. (*See* Dkt. # 60 at 2.) To the extent that there may be an issue of fact with respect to whether Topps owns the BattleTech Property, the Court treats Topps as the current owner of the Property for the purposes of this Order.

**LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

On a Motion for Summary Judgment, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, need not disprove matters on which the opponent has the burden of proof at trial. *Id.* at 323. In such cases, the burden is on the nonmoving party to establish a genuine issue of material fact. *Id.* at 322–23. The nonmoving party "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**DISCUSSION**

The Court grants summary judgment in favor of Topps because Malcomson has failed to present evidence establishing a genuine issue of material fact with respect to his claim for joint ownership of the BattleTech Property. Nevertheless, even if the Court takes Malcomson's unsupported factual arguments as true, Malcomson's claim for joint ownership of the BattleTech property is without merit.

**I. Malcomson Has Not Carried His Burden of Presenting Evidence of Topps' Alleged Liability.**

Because Malcomson carries the burden of proving that he is a joint owner of the BattleTech Property, he is required under Federal Rule of Civil Procedure 56 to "set forth specific facts showing that there is a genuine issue" of fact regarding joint ownership. Fed. R. Civ. P. 56(e); *see also Matsushita*, 475 U.S. at 586–87. In the District of Arizona, the manner by which litigants are required to set forth the material facts is provided by Local Rule of Civil Procedure 56.1, which provides:

> (a) Any party filing a motion for summary judgment shall file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion. Each material fact shall be set forth in a separately numbered paragraph and shall refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.). A failure to submit a separate statement of facts in this form may constitute grounds for the denial of the motion.
>
> (b) Any party opposing a motion for summary judgment shall file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party . . . . Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts shall, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing

LRCiv 56.1(a)–(b).

In this case, Malcomson has failed to provide evidentiary support for almost all of the factual assertions that he makes in his Motion for Summary Judgment and in his Response to Topps' Cross Motion for Summary Judgment. While Malcomson does occasionally cite portions of the record in his briefing, he does not provide any citation to the alleged agreement whereby Topps agreed to canonize or create joint ownership of the BattleTech Property. (Dkt. # 30 at ¶ 6.) In addition, he neither cites nor provides any affidavit setting forth the material terms of the alleged agreement. (*See generally* Dkt. ## 53, 60, 61, 66.)

Moreover, in spite of Federal Rule of Civil Procedure 56(e) and Local Rule 56.1, Malcomson did not file a separate statement of facts with his Motion or statement of facts controverting Topps' Motion. Since Malcomson carries the burden of setting forth facts that establish a genuine issue of material fact, his failure to present those facts is fatal to his opposition to Topps' Motion for Summary Judgment. *See* LRCiv 56.1(a). In addition, Malcomson has effectively admitted Topps' version of the facts for purposes of the parties' competing motions for summary judgment because he failed to file a controverting statement of facts in compliance with to Local Rule 56.1(b). *See* LRCiv 56.1(b). Due to Malcomson's failure to present evidence supporting his version of the facts, the Court is unable to determine whether Malcomson has set forth specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Here, Topps' Separate Statement of Facts provides, amongst other things, that Topps does not own WizKids and that neither party intended to create a joint work when Malcomson submitted the Revised Submission. (*See generally* Dkt # 54.) Accordingly, inasmuch as Malcomson has not provided any facts in support of his claims, and given that the Court is required under Local Rule 56.1(b) to accept Topps' version of the facts as having been admitted by Malcomson, summary judgment is appropriate in favor of Topps.

The fact that Malcomson is appearing in this case *pro se*, does not excuse his failure to comply with these procedural rules. As the Ninth Circuit has repeatedly held, *pro se* litigants are required to follow the same rules as parties who are represented by counsel. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.1995) (per curiam) (holding that *pro se* litigants are bound by the same rules and procedures as other litigants). In addition, the Ninth Circuit has "repeatedly upheld the sanction of dismissal for failure to comply with pretrial procedures mandated by local rules and court orders." *Thompson v. Housing Auth. of L.A.*, 782 F.2d 829, 830 (9th Cir. 1986); *see also* Fed. R. Civ. P. 41(b) (noting that failure to comply with the rules or a court order may be grounds for dismissal).

**II. Malcomson Fails to Provide Evidence of Joint Ownership.**

Even if the Court were to credit the unsupported facts that Malcomson alleges in his briefing, however, Malcomson's claim for joint ownership fails on the merits. The Copyright Act defines, a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101 (1976). To constitute a joint work, "each author" must provide "an independently copyrightable contribution." *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir.1990). "'The authors of a joint work are co-owners of copyright in the work.'" *Richlin v. MGM Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (quoting 17 U.S.C. at § 201(a)). And, "[e]ven if a person's contribution is minor, once he is accorded joint authorship status, he enjoys all benefits of joint authorship." *Id.* (citations omitted).

To determine whether a piece of intellectual property constitutes a joint work, the Ninth Circuit looks to the following three factors: (1) whether the party claiming joint ownership "superintends the work by exercising control[;]" (2) whether there are "objective manifestations" of a shared intent by the alleged co-authors to be co-authors; and (3) whether the "audience appeal of the work turns on both contributions, and whether the share of each in its success cannot be appraised." *Aalmuhammed*, 202 F.3d at 1234 (internal quotation marks and citations omitted); *see also Richlin*, 531 F.3d at 968 (approving the *Aalmuhammed* factors for joint ownership). In this case, none of these factors weigh in favor of Malcomson's joint ownership over the BattleTech Property.

### A. Control Over the Submission

First, Malcomson did not have "superintendence" over the Submission or the Revised Submission. *Aalmuhammed*, 202 F.3d at 1234. Instead, Topps, through FASA and WizKids, exercised control over these works. The very nature of Malcomson's original Submission, which was submitted "on-spec," meant that FASA had control because it "retain[ed] the option to reject the work even after [Malcomson] . . . submitted the complete manuscript." (Dkt. # 54 at ¶ 14.) There also is no evidence that Malcomson exercised control over the Revised Submission. Instead, the legal notice page on the BattleTech website stated that fan submissions, whether solicited or unsolicited, "shall be deemed, and shall remain, the

property of WizKids," and "WizKids shall exclusively own all now known or hereafter existing rights to the submission of every kind and nature . . . and shall be entitled to unrestricted use of the submissions . . . without compensation to the provider of the submission." (Dkt. # 48, Ex. B-3.) This indicates that WizKids had the unrestricted right to reject Malcomson's work.

To the extent that Malcomson exercised some control over the content of his ELH Submissions, WizKids had ultimate control because it had the unilateral right to reject whatever Malcomson submitted. In other words, Malcomson may have been in a position to submit proposals to WizKids, "but [WizKids] was not bound to accept any of them, and the [BattleTech Property] would not benefit in the slightest" from these submissions "unless [WizKids] chose to accept them." *See Aalmuhammed*, 202 F.3d at 1235. Hence, Malcomson "lacked control over the work, and absence of control is strong evidence of the absence of co-authorship." *See id.*

**B. Objective Manifestations of Shared Intent**

Similarly, Malcomson has not brought forth any evidence of a shared intent for the parties to be co-owners. When analyzing this factor, the Court looks to whether the parties intended joint ownership when the work was created. *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) (cited approvingly in *Aalmuhammed*, 202 F.3d at 1234); *see also Seigel v. Time Warner*, 496 F. Supp.2d 1111, 1145 (C.D. Cal. 2007) ("'The touchstone here is the intention, at the time the writing is done . . . .'") (quoting S. Rep. No. 94-473, at 103 (1975)). Generally, [t]he best objective manifestation of a shared intent . . . is a contract saying that the parties intend to be or not to be co-authors." *Aalmuhammed*, 202 F.3d at 1235. "In the absence of a contract," as is the case here, "the inquiry must of necessity focus on the facts." *Id.*

Based on the facts before the Court, neither FASA, WizKids, nor Malcomson made objective manifestations of an intent to be co-owners of the Submissions or the BattleTech property. Clearly FASA did not intend to be a co-owner of the Submission as FASA rejected Malcomson's Submission in September 1996. The correspondence between FASA and

Malcomson further demonstrates that Malcomson was never considered a co-creator of the BattleTech Property. (*See* Dkt. # 54 at 18.)

WizKids also did nothing to manifest an intent to become a co-owner over the Submissions or the BattleTech Property with Malcomson. On each page of the BattleTech website, including on each page of the Submission and the revised Submission, the copyright notice listed WizKids as the sole owner. (Dkt. # 54 at ¶ 29.) WizKids' official submission policy further provided that all solicited and unsolicited fan submissions "shall be deemed and shall remain, the property of WizKids," and WizKids shall exclusively own all . . . rights to the submission of every kind and nature."[4] (Dkt. # 48, Ex. B-3.) And while two pages of BattleTech's extensive website attributed an isolated writing credit to Malcomson, this does not constitute a manifestation of joint ownership over the BattleTech Property. *See Larson*, 147 F.3d at 203 ("[W]e fail to see how [defendant's] decision" to credit his dramaturg with a byline "on the final page in [a] script[] reflects co-authorship intent on the part of defendant[,]" where "the manner in which [defendant] listed credits on the script[] strongly supported the view that he regarded himself as the sole author.") Here, the manner in which WizKids listed itself as the sole owner of the BattleTech property on the website through its copyright notice demonstrates that WizKids regarded itself as the sole owner of that material. (Dkt. ## 48, Ex. B-3; 54 at ¶ 29.)

Malcomson further argues that another portion of The BattleTech website provides that material on the site is "owned by WizKids LLC, its licensors, and/or its content providers." (Dkt. # 60 at 7.) According to Malcomson, this notice evidences WizKids' intent for Malcomson be a co-owner of the BattleTech Property because he was a content provider. (*Id.*) For this to be true, however, each content provider would be a co-owner of The BattleTech Property, but the evidence before the Court provides that this is not the case.

---

[4] Malcomson appears to argue that this policy is unconscionable because it allows WizKids to use the intellectual property rights of others without compensation. Regardless of whether the policy is valid or invalid, it demonstrates that WizKids did not intent to create joint works with contributors, such as Malcomson.

1 | Instead, the manner in which WizKids treated its other writers indicates that the company did not consider Malcomson, or any of its other authors, to be a co-owner of the BattleTech Property. As explained in *Larson*, "Just as the parties' written agreements with each other can constitute evidence of whether the parties considered themselves to be co-authors . . . so the parties' agreements with outsiders can provide insight into co-authorship intent, albeit to a somewhat more attenuated degree." 147 F.3d at 204. The undisputed evidence provides that other individuals, who authored other BattleTech content, received a writing credit for their contribution, much like Malcomson did. These other authors, however, are not co-owners of the BattleTech Property. Rather, these authors transferred their intellectual property rights to FASA and WizKids. (Dkt. # 54 at ¶¶ 26–28.)

Similarly, there is no evidence that Malcomson intended to be a co-owner when he submitted the Submission or the Revised Submission. *See Larson*, 147 F.3d at 202 (holding that "a specific finding of *mutual* intent remains necessary" to prevail on a claim for joint ownership) (emphasis added). According to the court in *Larson*, "[A] writer's attribution of the work to herself alone is 'persuasive proof . . . that she intended this particular piece to represent her own individual authorship' and is 'prima facie proof that [the] work was not intended to be joint.'" *Id.* at 203 (quoting *Weissmann v. Freeman*, 868 F.2d 1313, 1320 (2d Cir. 1989)). Here, Malcomson renounced any claim to co-ownership by filing his 2008 copyright registration to the Revised Submission in his name only. And while Malcomson alleges that he is in the process of amending his copyright registration to reflect joint ownership (Dkt. # 48 at ¶ 3.), the relevant inquiry is not what Malcomson believes now, but what he believed when he created the work. *See id.* In his February 2009 Motion to Amend, Malcomson further indicated in that he did not believe his work to be a joint work when he filed his Complaint (*see* Dkt. # 25 at 2). Likewise in his July 20, 2009 deposition, Malcomson explained, "At the time of filing [of the Complaint], I did not believe that I was a co-owner of Battletech. I believed only that *I* owned specific portions of *my own work* as a contributor to a collected work . . . ." (Dkt. # 55, Ex. H at 91) (emphasis added.) Finally, in his reply memorandum, Malcomson again indicated that he "believ[ed] . . . that he

qualified only as 'a contributor to a collective work'" when he filed his Complaint. (Dkt. # 60 at 6.) Given that Malcomson attributed both the Submissions to himself when he filed his copyright registration and his original Complaint, it cannot be said that Malcomson intended these Submissions to constitute a joint work with FASA, WizKids, or Topps when these works were created. *See Larson*, 147 F.3d at 199 (holding that the relevant inquiry is the intention of the parties "at the time the writing is done").

The Court also rejects Malcomson's averment that the parties manifested their intent to create a joint work because the Revised Submission was "canonized." According to Malcomson, the parties' decision to adopt the Revised Submission as "canon" is a manifestation that they intended to "merge [the Revised Submission] into the BattleTech Property." (Dkt. # 66 at 3 (quoting 17 U.S.C. § 101).) To support his claim that WizKids adopted Malcomson's ELH manuscript as "canon," Malcomson argues that the Revised Submission was posted on an area of the BattleTech website reserved for official BattleTech content. (*See* Dkt. # 66 at 4.) Malcomson's argument, however, ignores WizKids' official policy and definition of "canonized" material. Under that definition, a work becomes BattleTech "canon" only if the intellectual property rights to that work have been transferred to WizKids. (Dkt. # 57 at ¶ 6.) Malcomson, however, vigorously contends that he never transferred his intellectual property rights to WizKids. (*See generally* Dkt. # 30.) In addition, the fact that the Revised Submission was removed from the BattleTech website in August 2005 further suggests that WizKids never "canonized" the Revised Submission.

Nevertheless, even if the Revised Submission was incorporated into BattleTech's "canon," Malcomson fails to explain how this demonstrates WizKids' intent to make the BattleTech property into a joint work with Malcomson as a co-owner. The undisputed evidence indicates that WizKids was not responsible for posting the Revised Submission on the BattleTech website. In 2002, when the Revised Submission appeared on the BattleTech website, the site was not owned or operated by WizKids or its affiliates. Instead, the BattleTech website was owned by FanPro and operated by BattleTech fans, who volunteered their time. (Dkt. ## 54 at ¶ 20; 66 at 4.) According to Malcomson, FanPro and its volunteers

lacked authority to act "on behalf of WizKids." (Dkt. # 66 at 4.) Since FanPro "did not [act] on behalf of WizKids" in posting the Revised Submission in the area of BattleTech's website reserved for "canon" (*id.*), it is unclear how FanPro's decision to post the content manifests WizKids' or Topp's intent to create a joint work.[5]

**C. Audience Appeal**

Finally, as to the third factor for joint ownership, there is no evidence in the record demonstrating that Malcomson's Submission or his Revised Submission had any audience appeal. *See Aalmuhammed*, 202 F.3d at 1234. Indeed, to the extent that Malcomson's Submissions were ever part of the BattleTech Property, they constituted only a small portion of that property. The BattleTech Property consists of over 100 novels and over 300 source books and rule books. ELH is briefly mentioned in these materials about twenty times. There simply is no evidence that these twenty references provided any contribution to the success and audience appeal of the BattleTech Property. *See id.*

## CONCLUSION

Because Malcomson's claim for joint ownership is unsupported by evidence in the record and is otherwise meritless, the Court grants summary judgment in favor of Topps. Accordingly, the Court need not address Malcomson's arguments for summary judgment.

**IT IS THEREFORE ORDERED:**

1. Malcomson's Motion for Summary Judgment (Dkt. # 46) is **DENIED;**

2. Topp's Cross-Motion for Summary Judgment (Dkt. # 53) is **GRANTED**;

---

[5]Malcomson does allege in his Amended Complaint that FanPro posted the Revised Submission upon direction from WizKids after Malcomson and WizKids came to an agreement whereby the Revised Submission would be "canonized." (*See* Dkt. # 30 at ¶ 6.) But, because Malcomson carries the burden of proving that the parties intended to create a joint work, he may not rely on the mere allegations of the Amended Complaint to avoid summary judgment. Instead, he must bring forth evidence from the record that creates a material issue of fact. *Id.* Malcomson, however, does not present the agreement itself, nor does he direct the Court's attention to any other affidavit or deposition evidence of that agreement. *See Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002).

3. The Court **DENIES** Malcomson's Memorandum Regarding Perjury. (Dkt. 67.) This Court does not investigate criminal conduct. If Plaintiff desires that such conduct be investigated, he should raise the matter with the appropriate law enforcement authority.

4. The Clerk of the Court is directed to **TERMINATE** this action.

DATED this 28th day of January, 2010.

*[signature]*
G. Murray Snow
United States District Judge