Scott Malcomson

450 N. Hall

Mesa, Arizona 85203

(602) 323-7458

calbeck@yahoo.com

FILED ____ LODGED
____ RECEIVED ____ COPY

FEB 1 2 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ Z. DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Scott Malcomson,

    Plaintiff,

v.

The Topps Company, Inc.,

    Defendant.

NO. CV08-2306-PHX-GMS

## Plaintiff's Motion to Alter or Amend Judgement

In accordance with Federal Rule of Civil Procedure 59, Plaintiff Scott Malcomson hereby requests alteration or amendment of the Court's Order of January 29, 2010 (Document Number 69). Grounds are provided for such alteration or amendment by Federal Rules of Civil Procedure 61 (Harmless Error) and 83 (Rules by District Courts), as well as Local Rule of Civil Procedure 56.1 (Summary Judgement), regarding the specific concerns given by the Court in rendering its Order, in addition to facts presented before this Court which appear to have been set aside or mis-stated by the Court.

**1) Plaintiff's Failure to Provide Separate Statement of Facts**

Local Rule of Civil Procedure 56.1 states: "A failure to submit a separate statement of facts in this form may constitute grounds for the denial of the motion". Plaintiff in fact filed his Statement of Facts within his Motion for Summary Judgement, by numbered paragraphs referencing matters of record per LRCP 56.1(a), on basis of his understanding that "separate" meant the Statement must be distinct from the rest of the Motion. On this basis, the Court disregarded Plaintiff's Statement of Facts as improper.

1

However, FRCP 61 (Harmless Error) makes clear that "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Neither the Court, nor the Defendant, have suggested that any party's substantial rights were affected by Plaintiff's failure to provide his Statement of Facts separately from the Motion as opposed to being included within it.

Additionally, LRCP 56.1 is an amended District Court rule, and thus subject to the requirements of FRCP 83 (Rules by District Courts). Per FRCP 83.1, "A local rule must be consistent with...federal statutes and rules adopted under 28 U.S.C.". Per FRCP 83.2, "A local rule imposing a requirement of form must not be enforced in such a way that causes a party to lose any right because of nonwillful failure to comply." The Court has not asserted or suggested that Plaintiff's failure to comply was willful. Neither does LRCP 56.1 itself require the Court to have found in this manner, as the use of the term "may" demonstrates that the Court in adopting this amended Rule considered situations may arise where dismissal is not appropriate, even if a Statement of Facts is not filed separately.

In excluding Plaintiff's Statement of Facts from consideration regarding both Plaintiff's Motion for Summary Judgement and Defendant's Cross-Motion for Summary Judgement, the Court enforced requirements of form in such a way as to harm Plaintiff's rights due to his nonwillful failure to comply.

These Rules immunize Plaintiff against precisely the grounds for decision which the Court employed against Plaintiff in its Order. The Court acted outside the requirements of Federal Rules of Civil Procedure in citing a harmless error, for purposes of enforcing a local requirement of form, in such way as to effectively deprive Plaintiff of rights as a moving party in a Motion for Summary Judgement.

## 2) RE: Legal Standards

When considering that the Court improperly disregarded Plaintiff's Statement of Facts, the Court's Order appears to be largely contradictory to its stated "Legal Standard" (Order, pg. 4, paras. 1-2).

The Court states that the Plaintiff bore the burden of establishing genuine issues of material fact regarding his own claim (Order, pg. 4, para. 3). But the Court's Legal Standard states otherwise: "On a Motion for Summary Judgement, the moving party 'bears the initial responsibility of...identifying those portions of [the record] which it BELIEVES demonstrate the ABSENCE of a genuine issue of material fact.' " (Order, pg. 4, para. 2, capitals mine)   As the nonmoving party relative to Plaintiff's Motion for Summary Judgement, it was Defendant's requirement to establish genuine issues: "...the burden is on the nonmoving party to establish a genuine issue of material fact...The nonmoving party 'may not rest upon the mere allegations or denials of [the party's] pleadings, but...must set forth specific facts showing that there is a genuine issue for trial.' " (Order, pg. 4, para. 2).

Federal and Local Rules of Civil Procedure divide the responsibility of parties in Motions for Summary Judgement on basis of which is the movant and which is the opponent, per LRCP 56.1 (a)-(d), FRCP 56(c)(1)(B)-(C), and FRCP 56(e)(1)-(2).  LRCP 56(d) states that the opposing party in a Motion for Summary Judgement "...shall...serve and file a responsive memorandum in opposition". Defendant did so, under the title of "Defendant's Opposition to Plaintiff's Motion for Summary Judgement and its Cross-Motion for Summary Judgement".  Simultaneously, Defendant filed a single Statement of Facts, titled "Defendant's Local Rule 56.1(a) Statement of Facts in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Cross-Motion for Summary Judgment".

Defendant thus conflated the roles of opponent and movant into a single Statement of Facts. FRCP 7(a) (Pleadings) requires that any given Pleading must be either a complaint or an answer; not both. Per FRCP 56(e)(2), responses opposing a Motion for Summary Judgement are Pleadings. Defendant failed to meet the requirements of FRCP 7(a) by filing its Statement of Facts simultaneously as answer and complaint. The filing also failed to meet the requirements of LRCP 56.1(a), which provide only for a supporting Statement of Facts, not for opposition, which is separate under LRCP 56.1(b).

**2**

In any event, Defendant filed its Cross-Motion as a responsive memorandum, and filed its Statement of Facts in support of that responsive memorandum, establishing itself as opponent of Plaintiff's Motion. Per LRCP 56.1(b), "Any party opposing a motion for summary judgment shall file a statement...setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed". Defendant did not do so.

As Defendant did not file a Statement of Facts to support its Cross-Motion in accordance with LRCP 56.1(b), Plaintiff was not required to file an opposing Statement of Facts. As Defendant erroneously filed an opposing Statement of Facts as a LRCP 56.1(a) document, further failed to provide paragraphs within its Statement of Facts which corresponded to Plaintiff's numbered Statement of Facts paragraphs per LRCP 56.1(b), and further failed to meet the requirements of a Pleading per FRCP 7(a), Defendant did not file a qualifying Statement of Facts.

Defendant's actions further had the effect of harming Plaintiff's rights as a respondent; LRCP 7.2(e) (Length of Motions and Memoranda) restricts Motions and their responses to 17 pages. Replies to responses are limited to 11 pages. In conflating its responses to Plaintiff's Motion with its own Cross-Motion and Statement of Facts, Plaintiff's ability to respond was effectively halved. As this was due to Defendant's willful decision to conflate both complaint and answer within its Pleadings, Defendant does not obtain protection under FRCP 61.

**3) RE: "Discussion"**

The Court's decision that Plaintiff "failed to present evidence establishing a genuine issue" is based wholly on the argument that Plaintiff carried a burden of controverting Defendant's Statement of Facts. Yet by statute, both Defendant's Statement of Facts and its Cross-Motion failed to meet the standards

**4**

even of qualifying as proper Pleadings due to conflation of support for complaint as well as answer within the same entity in each filing. The Court took no notice of this, nor that Defendant failed to controvert Plaintiff's Statement of Facts, nor that Plaintiff filed a Statement of Facts at all.

Instead, the Court has held that Plaintiff's did not actually file a Statement of Facts because it was not filed as a separate document, without any suggestion by either the Court or Defendant that such misfiling was willful, nor that such error deprived any party of its substantial rights. FRCP 61 requires the Court to disregard any such error, while FRCP 83.2 prohibits a judgement made on this basis. Quite the opposite is true: because Defendant did not properly file a Statement of Facts in support of its own Cross-Motion, instead allocating that function to a Statement filed in direct opposition to Plaintiff's Motion, the burden of establishing genuine issues fell upon the Defendant. Because Defendant's opposition Statement of Facts did not controvert any of the numbered paragraphs in Plaintiff's Statement of Facts, Defendant admitted by statute to all of Plaintiff's claims.

**4) RE: "I. Burden of Presenting Evidence of Topps' Alleged Liability"**

The Court's ruling in this section is based entirely on Plaintiff not having provided a Statement of Facts to controvert a document which, itself, does not qualify as either Pleading or Statement of Facts.

While acknowledging that Plaintiff "does occasionally cite portions of the record" (Order, pg. 5, para. 4), the Court appears to take no actual notice of any such citations in its Order. Instead, the Court holds that "the Court is required under Local Rule 56.1(b) to accept Topps' version of the facts as having been admitted to by Malcomson" (Order, pg. 6, para. 2). In this way, it is clear that the Court simply chose not to consider any facts or citations which were not presented in the format established by LRCP 56.1(a), despite the fact that Defendant did not properly file a document requiring such response.

5

**5) RE: "II. Malcomson Fails to Provide Evidence of Joint Ownership**

The Court's subsequent concern for "merits" similarly relies upon accepting all of Defendant's claims as having been unchallenged as a matter of technicality, not fact.

*Aalmuhammed v. Lee*

The Court begins by simply rephrasing Defendant's statements regarding the Ninth Circuit decision in *Aalmuhammed v. Lee*, 202 F.3d at 1234, in order to establish that the "three factors" mentioned in that case amounted to a rigid formula for copyright co-ownership which Plaintiff failed to meet. The Court did not apparently consider the Ninth Circuit's express opposition to having its "three factors" used thus (Plaintiff's Reply Memorandum in Support of its Motion for Summary Judgement and in Opposition to Defendant's Cross-Motion for Summary Judgement, pg. 8, para. 4): "The factors articulated in this decision and the Second and Seventh Circuit decisions cannot be reduced to a rigid formula, because the creative relationships to which they apply vary too much."

The "three factors" themselves were immediately prefaced by: "...several factors suggest themselves as amongst the criteria for joint authorship, in absence of a contract." That these were suggestions, forming a limited list of possible criteria, does not provide for the establishment of a rigid test.

**6) RE: "A. Control Over the Submission"**

The Ninth Circuit's entire point of establishing "control" and "superintendence" in *Aalmuhammed* was a matter of determining who is the author of a contribution to a purported joint work. This itself drew heavily upon the US Supreme Court definition of an "author" in *Burrow-Giles Lithographic v. Sarony*, 111 U.S. 53 (1884). The USSC established in *Sarony* that "control" resides in "the man who actually creates the picture". This Order, however, while recognizing that Plaintiff "exercised some control", asserts that WizKids "had ultimate control because it had the unilateral right to reject", and therefore that

Plaintiff "lacked control over the work" (Order, pg. 8, para. 2).

The "right to reject", however, does not "create the picture" as mandated by the US Supreme Court. It is an editorial control, which any publisher retains as a basic right, but it does not grant or even suggest authorship. By upholding Defendant's position, the Court instead creates a very chilling effect upon the free exchange of ideas. If any and all derivative works created "on spec" are inherently "superintended" and "controlled" by any party with "the option to reject the work", then any such party can claim to be the author of such works merely by dint of editorial control.

The Court's position on this matter is in fact identical to the "actual control" test of the Second Circuit in *Aldon Accessories Ltd. v. Speigel, Inc.*, 738 F.2d 548, which was also used by the Seventh Circuit in *Evans Newton, Inc. v. Chicago Systems Software*, 793 F.2d 889. Under this test, a party commissioned to create a work was performing a work-made-for-hire if the hiring party exercised any control at all.

The Fifth Circuit, however, established the "agency law" test in *Easter Seals Society v. Playboy*, 815 F.2d 323, wherein the court ruled that control and supervision were not sufficient to satisfy the Copyright Act of 1976. Instead, the Fifth Circuit held that the "actual control" test was a retrenchment to the "...'work for hire' doctrine under the 1909 Act", requiring a "radical break" for a proper standard.

The "agency law" standard was confirmed by the US Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989). In that case, the plaintiffs had commissioned a sculpture from Reid, subsequently agreeing to make the sculpture's base, suggesting people to use as models, and suggesting changes throughout the process. Neither party raised the issue of copyright, nor did the parties put anything about it in writing. Initially, the District Court adopted an "actual control" standard, reasoning that Reid was a statutory "employee" under the work-made-for-hire provision of the 1976 Copyright Act because Snyder and CCNV "conceived the idea" and "directed enough of Reid's effort to

7

assure that, in the end, he had produced what they, not he, wanted." On appeal, the Supreme Court held that such does not provide sufficiency to establish a employee relationship, and remanded the case back to the District Court, which found that Reid was a joint co-owner of copyright.

The Ninth Circuit further clarified the issue with its "formal salaried employee" test in *Dumas v. Gommerman*, 865 F.2d 1093 (1989), holding that an "employee" was one who worked regular hours and received a regular salary. All others were not employees, and were to be treated per section 101(2) of the 1976 Copyright Act regarding works "specially ordered or commissioned." The only such mention appears under the definition of a "work made for hire": "a work specially ordered or commissioned for use as a contribution to a collective work,... as a compilation, ...or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."

The Ninth Circuit therefore brings this tortured issue of "control" back to ground by requiring that it cannot be seized without the existence of a signed instrument, which Defendant has not shown exists.

**7) RE: "B. Objective Manifestations of Shared Intent"**

The Court states "Malcomson has not brought forth any evidence of a shared intent for the parties to be co-owners". While this is a commonly-repeated refrain appearing in Defendant's filings in this case, no citations have been presented by the Defendant or Court in support. Instead, where citations speak of a partnership of any kind, the term used is "co-author", not "co-owner" (Order, pg. 8, para. 3).

Per USC 17, Sec. 101, "A 'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." There is no requirement that the authors must also intend to co-own. Per USC 17, Sec. 201(a), "The authors of a joint work are coowners of copyright in the work." Co-ownership results from co-authorship; intent to

co-own is not a prerequisite for co-authorship, and none of the citations provided indicate otherwise. Nonetheless, the Court holds throughout this section that Plaintiff's failures are reliant on his not having proven an intent on the part of any other parties to co-own the Battletech Property. This appears to remain a matter of treating all Defendant claims as having been admitted to by Plaintiff.

Website Submission Policy

The Court repeats Defendant's misrepresentative claim that WizKids' website submission policy barred co-ownership in the Property on grounds it "provided that all solicited and unsolicited fan submissions 'shall be deemed and shall remain, the property of WizKids' and "WizKids shall exclusively own all...rights to the submission of every kind and nature" (Order, pg. 9, para. 2). Again, this is a mere allegation of the Defendant, being treated as though Plaintiff had admitted to it.

The actual policy reads: "If at our request you send certain specific submissions (e.g., postings to chat, boards, or contests) or, despite our request that you not send us any other creative materials, you send us creative suggestions, ideas, notes, drawings, concepts or other information (collectively, the "submissions"), the submissions shall be deemed, and shall remain, the property of WizKids LLC." (Plaintiff's Motion for Summary Judgement, Exhibit B-3, pg. 2, paras. 3-4).

Defendant has not shown that WizKids either requested any submissions from Plaintiff, or that any were sent without their consent. Defendant thus failed to establish a geniune issue with Plaintiff's assertion, in his Statement of Facts, that his work was originally used by WizKids without permission, nor that it was subsequently used under an agreement reached between Plaintiff and WizKids (Plaintiff's Motion for Summary Judgement, pg. 2, para. 2). Defendant thus admitted that such an agreement existed per LRCP 56.1.

Even were this not the case, the Court quotes the Ninth Circuit in *Aalmuhammed*, "In the absence of

a contract, the inquiry must of necessity focus on the facts."  Defendant has stated "Topps assumes, for purposes of this motion only, that WizKids posted the submissions on the Battletech site" (Defendant's Opposition to Plaintiff's Motion for Summary Judgement and its Cross-Motion for Summary Judgement, pg. 6, FN 2).  The facts show that WizKids initially published one version of Plaintiff's work without accreditation in 2001, and then a second, very different version which accredited Plaintiff as the writer in August 2002 (Plaintiff's Motion for Summary Judgement, Exhibit B-2).

At a minimum, then, Plaintiff agreed to create and submit the second work, WizKids agreed to publish it with acknowledgement of Plaintiff as the writer, and Plaintiff retained his copyrights to the work, in the absence of a signed instrument allowing any transfer of rights.  For any such transfer to have occurred, USC 17 Sec. 201(b) and USC 17 Sec. 204(a) both make clear that a signed agreement must exist.  This is further clarified by USC 15 Sec. 7001(g): "If a statute...requires a signature...to be...acknowledged, ...that requirement is satisfied if the electronic signature of the person authorized...is attached to or logically associated with the signature or record."  Defendant has not shown any signature of Plaintiff's.

<u>Website Ownership/Content</u>

The Court erroneously holds that Plaintiff argued for an objective manifestation on the part of WizKids to co-own the Battletech Property, on basis that ClassicBattleTech.com was "owned by WizKids LLC, its licensors, and/or its content providers".  It is Defendant, not Plaintiff, which has asserted that the truncated quote above pertains to website ownership, when in fact it concerns ownership of content appearing on the site:  "All of the content featured or displayed on this website... is owned by WizKids LLC, its licensors, and/or its content providers." It is the preceding sentence which references website ownership: "This website is owned and operated by WizKids LLC" (Plaintiff's Motion for Summary Judgement, Exhibit B-3, pg. 1, para. 2).

By endorsing all of Defendant's claims as unopposed facts, the Court confuses the roles of content provider and website owners, thereafter basing its ruling on the idea that "each content provider would be a co-owner of the Battletech Property". Yet no one has shown that any other content providers had their material published by WizKids as part of the Battletech Property, in absence of a contract imposing some form of copyright transfer, and even if others had done so, it would be improper to dismiss claims purely on basis that many such claimants might exist.

Nonexistent Work-For-Hire Relationship

The Court notes all other authors who worked on the Battletech Property did so under agreements whereby they "transferred their intellectual property rights to FASA and WizKids", referencing *Larson* as support insofar as that "parties' agreements with outsiders can provide insight into co-authorship intent" (Order, pg. 10, para. 1). However, the Court takes no notice of the fact that all such transfers took place as a result of work-for-hire relationships, and subsequently insists that Plaintiff be treated as though he had similarly agreed to one simply because doing so was standard policy at WizKids.

This amounts to nothing less than a Court-Ordered transfer of copyright in Plaintiff's original work from Plaintiff to WizKids, prohibited by USC 17 Sec. 201(e) : "When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title..."

Misrepresentation of Copyright Filing as Renouncing Co-Ownership

Quoting *Larson* in support, the Court erroneously states that Plaintiff "renounced any claim to co-

**11**

ownership by filing his 2008 copyright registration to the Revised Submission in his name only...the relevant inquiry is not what Malcomson believes now, but what he believed when he created the work" (Order, pg. 10, para. 2).

This does not, however, demonstrate what Plaintiff believed at the time of creation, August 2002. It has already been demonstrated, however, that Plaintiff created his original work to be merged into the Battletech Property, as the "1996 FASA Submission Guidelines" required his proposal be developed with precisely that goal in mind (Plaintiff's Motion for Summary Judgement, Exhibit A-1). Nothing has been shown to suggest that the Revised Submission was not similarly intended to be so merged.

The Court has taken note of the fact that, in his July 20, 2009 deposition, Plaintiff asserted belief that he was a "contributor to a collected work" (Order, pg. 10, para. 2), but gives no consideration to the fact that this shows Plaintiff believed he had provided a contribution to a larger body of work. Plaintiff also stated in his deposition that his reason for revisiting his view was discovery of FASA's written intent to merge in the event his work was published (Ebert Affidavit, Exhibit H, pg. 92). Plaintiff also stated, contrary to the Court's position, that he did not in fact make a singular copyright claim in his 2008 filing: "I said that my work included new elements that had not appeared in other material and that otherwise it was a compilation" (Ebert Aff., Exhibit H, pg. 63). Plaintiff's actual copyright claim also asserts that it relates to a claim on "additional" fiction "not addressed in previous publications" (Ebert Aff., Exhibit E).

Plaintiff's conclusion that he was a "contributor to a collected work" was not therefore a result of disbelief in his own intent to be a co-author, but due to a lack of objective confirmation that such intent had existed on the part of the other parties involved. Once Plaintiff obtained what he considered to be objective proof, he properly revised his claim to reflect the available information. This in no way suggests that he did not consider himself a co-author, as opposed to being a co-owner.

**12**

Company Policy vs. Company Actions

The Court seeks to insulate WizKids from the actions of its agents on basis of the fact that those agents acted in a manner which appeared contrary to corporate policy, in that they published Plaintiff's work as a canon part of the Battletech Property without also acting to transfer Plaintiff's copyrights to the company. But the doctrines of respondeat superior and negligent retention do not allow a company to be insulated from the acts of its agents merely on grounds that it fielded a policy.

In *New York Central v. United States*, 212 U.S. 481, the US Supreme Court found that corporations are purely legal entities which cannot actually act, or intend an action. The Court therefore focused on the actions of employees as a means of imputing corporate intent, via the respondeat superior doctrine: "In actions for tort, a corporation may be held responsible for damages for the acts of its agent within the scope of his employment, *Lake Shore & Michigan Southern R. Co. v. Prentice*, 147 U. S. 101, even if done wantonly, recklessly or against the express orders of the principal. A corporation is responsible for acts not within its agent's powers, strictly construed, but assumed to be done by him when employing authorized powers, and in such a case no written authority under seal is necessary. *Washington Gas Light Co. v. Lansden*, 172 U. S. 534."

By certifying that ClassicBattleTech.com was "owned and operated by WizKids LLC", WizKids imparted the power of the company to the operators of the website, who thereafter acted in the company name. WizKids' action, committed by its authorized agents, was to publish Plaintiff's work, which Defendant has openly assumed was the case.

The Court further asserts that the removal of Plaintiff's work from the site in August 2005 can and should be construed as evidence that WizKids never canonized the Revised Submission (Order, pg. 11, para.2), but this ignores the presented testimony of the person who conducted that removal, website manager Jason Knight (Plaintiff's Motion for Summary Judgement, Exhibit B-8).

**13**

Contrary to the Court's position, Knight asserts: "I was contacted by a company representative to give credit to Mr. Malcomson, which was done, but upon review it was found that it was NOT the canon text from the 1987 handbook, so it was removed and replaced with in-house materiel. That particular decision was MINE, as once I had all the facts I treated under the rules that today would be known as a DCMA takedown. If it was not from a printed sourcebook we at the time did not want it on our site in the canon universe information."

Knight's declaration of taking responsibility for the decision shows he acted on his own, not at the direction of the company, and largely on basis that he personally mistook Plaintiff's work at first for being wholly that of a different author: "I know when I saw it in 2004 and ran my own script to update the site.. that's what I assumed it was." Earlier in his letter, Knight accuses Plaintiff of stealing the 1987 material: "[Malcomson's] use of the material without permission from the 1987 handbook could also be construed as plaguarism (sp) and theft..." Knight's statements therefore establish that the work's removal was a matter of his personal mistaken belief that Plaintiff had committed plagiarism, not as a matter of canon.

In August 2005, the website's "Terms and Conditions of Use" stated that it was "owned and operated by FanPro LLC" (Plaintiff's Motion for Summary Judgement, Exhibit B-9). Knight's action was therefore on behalf of FanPro, not WizKids, and apparently in direct contradiction to the decision of a "company representative" to accredit Plaintiff for the work. And while Knight states that there was a desire as of August 2005 not to have material on the website which had not appeared in a sourcebook, that would have been the policy of website operator FanPro, not WizKids, and thus could not be considered a repudiation of WizKids' August 2002 decision to publish Plaintiff's work as canon material.

Canon Publication: WizKids, not FanPro

The Court states "The undisputed evidence indicates that WizKids was not responsible for posting

**14**

the Revised Submission on the Battletech website". Yet Defendant has assumed the precise opposite (Defendant's Opposition, pg. 6, FN 2). The Court bases its position on the premise that "around" 2001, ClassicBattleTech.com was a "fan website, which was owned by Fantasy Productions LLC ("FanPro") and operated pursuant to a licensing agreement between WizKids and FanPro" (Order, pg. 2, para. 3).

This was, again, a mere allegation made by Defendant in opposition to Plaintiff's Motion for Summary Judgement (Defendant's Statement of Facts, pg. 7 at 20), which the Court's Legal Standard expressly prohibits from establishing a genuine issue of material fact (Order, pg. 4, paras. 1-2). Contrarily, the Court has held that the website's "Terms and Conditions of Use" for August 2002 are legally binding upon Plaintiff (Order, pg. 7, para. A), but has ignored the fact that these "Terms" also state the site was owned and operated by WizKids LLC at the time of publication (Plaintiff's Motion for Summary Judgement, Exhibit B-3, pg. 1, para. 2).

**8) RE: "Audience Appeal"**

The third of the "three factors" improperly imposed as a rigid formula against the expressed will of the Ninth Circuit, Plaintiff has never claimed interest in the Battletech Property "turned" on his contribution. Nor, in fact, did the Ninth Circuit in Aalmuhammed state or suggest that a claim for joint ownership could or would of necessity turn solely on basis of lack of audience appeal.

**9) Defendant's Violation of Court Order**

The Court has also not concerned itself with Defendant's declared decision not to comply with the Court's Case Management Order of 20 February, 2009. Per Item 8 of the Order: "Deadline for Engaging in Good Faith Settlement Talks. All parties and their counsel shall meet in person and engage in good faith settlement talks no later than October 30, 2009." Per Item 10 of the Order: "The Deadlines are

Real. The parties are advised that the Court intends to enforce the deadlines set forth in this Order..."

When Plaintiff reported Defendant's unwillingness to so meet, Defendant's response was that it did not believe that any such meeting would be productive, and to falsely claim that they did not refuse to meet face-to-face. Instead, Defendant claimed that Plaintiff refused to travel to New York City for such a meeting, and that Defendant advised Plaintiff that it would not come to him in Phoenix (Defendant's Report on Settlement Talks, pg. 2, para. 2). Given that Plaintiff was unemployed and had no resources for a trip to New York, and that Defendant has already traveled to Phoenix to meet with Plaintiff for its own benefit (per Malcomson's Deposition), and that face-to-face talks were ordered, not predicated on the convenience of parties or their individual belief in the possibility of a satisfactory resolution, Defendant had no excuse for not complying with the Court's Order.

Nonetheless, the Court has taken no notice of this noncompliance, nor did it enforce its deadline.

**CONCLUSION**

As the Court's specific reason for granting summary judgement in favor of Topps was because Plaintiff "has failed to present evidence establishing a genuine issue of material fact with respect to his claim for joint ownership of the Battletech Property" (Order, pg. 4, para. 3), its decision is directly contrary to its own Legal Standards, as no party in any Motion for Summary Judgement is ever required to establish genuine issues of material fact against their own claims. Even were this not the case, Defendant only filed one Statement of Facts, did so as a response to Plaintiff's Motion, and therefore did so as an opposing party. Plaintiff, as movant, was not required to establish genuine issues of material fact against Defendant's claims, let alone against his own.

Although the Court presents further points to support its decision against Plaintiff, they are

**16**

overwhelmingly based on treating Defendant as having established unchallenged claims of fact, while treating Plaintiff's Statement of Facts in a manner prohibited by FRCP 61 and FRCP 83.2.

Plaintiff therefore requests the Court alter and amend its Order to account for:

1) Plaintiff's Statement of Facts in support of his Motion for Summary Judgement having been filed,

2) Plaintiff's Statement of Facts having been admitted to by Defendant via non-response,

3) Defendant's Statement of Facts failing to meet the requirements of LRCP 56.1 or FRCP 7(a),

4) "Actual control" no longer being a functional test before the Courts, and

5) Defendant's willful violation of the Court's Case Management Order requirements.

RESPECTFULLY SUBMITTED THIS FEBRUARY 10, 2010.

SCOTT MALCOMSON, Plaintiff, filed *pro se*, 450 N. Hall, Mesa, Arizona 85203, (602) 323-7458

Certificate of Service: I certify that a copy of the foregoing Motion to Alter or Amend Judgement was served on Defendant, in the person of Mioko Tajika, of Ingram Yuzek Gainen Carroll & Bertolotti, LLP, 250 Park Avenue, New York, New York 10177 this February 10, 2010.

**17**